EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| MAPFRE Preferred Risk Insurance Co. & Popular Auto<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Recurrido | Certiorari<br><br>2022 TSPR 80<br><br>209 DPR \_\_\_\_ |

Número del Caso: CC-2020-284

Fecha: 24 de junio de 2022

Tribunal de Apelaciones:

    Panel IV

Abogada de la parte peticionaria:

    Lcda. María Celeste Rodríguez Miranda

Oficina del Procurador General:

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. María Astrid Hernández Martín
    Procuradora General Auxiliar

Materia: Sentencia del Tribunal con Opinión de Conformidad y Opinión Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MAPFRE Preferred Risk
Insurance Co. & Popular Auto

    Peticionario

       v.                    CC-2020-0284

Estado Libre Asociado de Puerto
Rico

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 24 de junio de 2022.

Luego de examinar el recurso de *certiorari*, así como los alegatos de las partes, las Juezas y los Jueces de este Tribunal se encuentran igualmente divididos en cuanto a sus votos. Por lo tanto, y conforme a la Regla 4(a) del Reglamento de este Tribunal Supremo, 4 LPRA Ap. XXI-B, se confirma el dictamen recurrido del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García emite una Opinión de Conformidad a la cual se unen el Juez Asociado señor Martínez Torres, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez emite una Opinión Disidente a la cual se unen el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez. La Jueza Asociada señora Pabón Charneco disiente y emite las expresiones siguientes:

"Disiento del resultado anunciado en la Sentencia que antecede por los fundamentos que expresé en mi opinión de conformidad emitida en *Bco. Bilbao Vizcaya et al. v. ELA*, 195 DPR 39 (2016) (Sentencia). En el presente

caso, mediante Resolución dictada el 14 de junio de 2017, el Tribunal de Primera Instancia, determinó no causa para arresto y desestimó los cargos en contra de los señores Edgardo Lugo Morales, Kevin Molina Santiago y Giovanni Rolón Velázquez. Ante estos hechos, el 11 de julio de 2017, MAPFRE Preferred Risk Insurance Co. y Popular Auto, Inc. presentaron una Demanda para impugnar la confiscación en controversia. Mediante la Ley Núm. 287-2018, la Asamblea Legislativa, el 29 de diciembre de 2018, enmendó el Art. 8 de la Ley Núm. 119-2011, conocida como Ley Uniforme de Confiscaciones de 2011, en el que dispuso las instancias en las que no aplicaría la Doctrina de Impedimento Colateral por Sentencia en los procesos de confiscación. Específicamente, la enmienda dispuso que no se aplicaría la doctrina "[...]**en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en el cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito**". 34 LPRA sec. 1724e.

Por lo tanto, dado que los hechos que nos ocupan ocurrieron previo a la enmienda de la Ley Núm. 119-2011, lo correcto era aplicar de la Doctrina de Impedimento Colateral por Sentencia en el presente caso. Debemos recordar que dicha enmienda no es de aplicación retroactiva. Así las cosas, en el futuro, en aquellos casos que los hechos sean con posterioridad al 29 de diciembre de 2018, aplicaré el citado artículo conforme a lo dispuesto por la Asamblea Legislativa".

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| MAPFRE Preferred Risk Insurance Co. & Popular Auto, Inc.<br><br>Peticionario<br><br>v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>Recurrido | CC-2020-0284 | *Certiorari* |

**Opinión de Conformidad emitida por el Juez Asociado señor Rivera García a la cual se unen los Jueces Asociados señores Martínez Torres, Kolthoff Caraballo y Feliberti Cintrón**

En San Juan, Puerto Rico, a 24 de junio de 2022.

El dictamen que anunciamos en el día de hoy confirma ——correctamente—— una *Sentencia* del Tribunal de Apelaciones, la cual, a su vez, confirmó al Tribunal de Primera Instancia. Con este proceder, validamos el curso de acción bien fundado en derecho que emplearon los foros inferiores. Estos, indudablemente, **aplicaron fielmente la normativa sobre la impugnación de las confiscaciones civiles en armonía total con el esquema diseñado por nuestra Asamblea Legislativa**. Por estar en franco acuerdo con el desenlace anunciado, consigno mi conformidad.

Ahora bien, no me es posible emitir mis expresiones sin hacer constar, una vez más, mi decepción con la **renuencia de ciertos miembros de este Foro al no reconocer el mandato patente de nuestros legisladores en el esquema estatutario sobre las confiscaciones civiles**. Como he reiterado incansablemente desde Banco Bilbao

<u>Vizcaya, et al. v. ELA</u>, 195 DPR 39, 56 (2016) (Opinión disidente), y <u>Mapfre Praico Insurance Company, et al. v. ELA</u>, 195 DPR 86, 90 (2016) (Opinión de conformidad), **la Ley Uniforme de Confiscaciones de 2011, *infra*, tuvo como intención separar tajantemente la acción civil de impugnación de una confiscación de cualquier otro procedimiento adjudicativo basado en los mismos hechos**.

Lo anterior, implica que, en esta materia, **no es aplicable la doctrina de impedimento colateral por sentencia. La misma es del todo incompatible con la intención legislativa**. Más aún, es igualmente improcedente la disposición de un pleito bajo esta ley, mediante la aplicación irreflexiva del mecanismo de la sentencia sumaria, **cuando el único fundamento para ello es la evidencia del resultado de una acción penal separada**.

Al desaprovechar esta oportunidad, los compañeros disidentes abonan a la incertidumbre que aún permea esta área de nuestro derecho. Incertidumbre que, insisto, obedece al **menosprecio** que algunos miembros de este Foro han exhibido hacia la **clara intención de la Asamblea Legislativa** en este tema. A falta de una expresión categórica de este Tribunal, solo persistirá la proliferación de decisiones inconsistentes en los foros inferiores. No puedo avalar tal consecuencia.

Tal y como expondré a continuación, el cúmulo del historial legislativo, al igual que las acciones posteriores que nuestra Asamblea Legislativa tomó mediante la aprobación de la Ley Núm. 287-2018, *infra*, demuestran, inequívocamente, que **la intención** del legislador, a partir de la aprobación de la Ley Uniforme de Confiscaciones de 2011, *infra*, **ha sido la de desligar el procedimiento de confiscación civil del resultado de la presunta acción penal**. Veamos.

### I.

Los hechos que motivaron la acción de impugnación de confiscación en este caso son en extremo sencillos. El Estado presentó sendas denuncias criminales contra tres (3) individuos por la presunta posesión de la sustancia controlada conocida como marihuana.[1] En conexión con estos mismos hechos, el Estado confiscó un vehículo. Según detalló el Departamento de Justicia en una misiva cursada a Popular Auto Inc. (Popular Auto), el vehículo fue utilizado en violación al Artículo 404 de la Ley de Sustancias Controladas, Ley Núm. 4 de 23 de junio de 1971, 24 LPRA sec. 2101 et. seq.[2]

Ahora bien, las denuncias criminales no prosperaron, pues al ser sometidos a una vista de causa probable para arresto, conforme con la Regla 6 de Procedimiento

---

[1] Apéndice del *Certiorari*, *Denuncias*, págs. 49-54.
[2] Apéndice del *Certiorari*, *Carta Notificando Confiscación*, págs. 4-5.

Criminal[3], surge que el Tribunal de Primera Instancia arribó a una determinación de no causa en cuanto a los tres (3) imputados.[4] Además, no se desprende que el Estado haya recurrido de esta denegatoria.

Posteriormente, Mapfre Preferred Risk Assurance Company (Mapfre) y Popular Auto instaron una acción para impugnar la confiscación. Tras varios trámites, incluida la conclusión de la acción criminal, Mapfre promovió una *Solicitud de Sentencia Sumaria*. En esencia, sostuvo que en este caso solamente persiste una controversia estrictamente de derecho, a saber, si el archivo de los cargos contra los individuos que fueran imputados constituye cosa juzgada en su modalidad de impedimento colateral por sentencia.[5] De esta manera, le solicitaron al foro primario que declarara nula la confiscación efectuada por el Estado.[6]

Por su parte, el Estado, se opuso a la solicitud, al exponer, en síntesis, que la normativa en la cual los peticionarios se habían fundado quedó expresamente revocada por la aprobación de la Ley Uniforme de Confiscaciones de 2011, *supra*.[7] Además, argumentó que las enmiendas implementadas mediante la Ley Núm. 287-2018, *infra*, representan correctamente la intención del

---

[3] 34 LPRA Ap. II.
[4] Apéndice del Certiorari, *Denuncias*, supra.
[5] Apéndice del Certiorari, *Solicitud de Sentencia Sumaria*, pág. 23.
[6] Íd., pág. 37.
[7] Apéndice del Certiorari, *Moción en Oposición a Solicitud de Sentencia Sumaria*, pág. 63.

legislador de no aplicar la doctrina de impedimento colateral por sentencia automáticamente en los casos donde se impugna una confiscación.[8] De esta manera, concluyó que no se rebatía la presunción de corrección y legalidad de la confiscaciones meramente presentado prueba sobre el resultado de la causa criminal.[9] Por el contrario, sostuvo que era necesario que se pasara prueba en un juicio plenario.[10]

Posteriormente, el foro primario acogió la postura del Estado y denegó la moción instada. Luego, al recurrirse ante el Tribunal de Apelaciones, este otro foro coincidió con el razonamiento empleado por el Estado. En desacuerdo aún con los dictámenes de los foros inferiores, Mapfre y Popular Auto recurrente ante este Tribunal en recurso de *Certiorari*.

Habiendo examinado el marco jurídico que atiene a esta controversia, forzoso es confirmar las actuaciones de los tribunales inferiores. Veamos.

## II.

### A. Confiscación civil *vis a vis* la confiscación criminal

La confiscación es el acto mediante el cual el Estado, representado en este caso por el Poder Ejecutivo, priva a una persona de su propiedad sin compensación económica, basado únicamente en que dicha propiedad fue

---

[8] Íd., pág. 65.
[9] Íd., pág. 67.
[10] Íd.

utilizada en la comisión de ciertos delitos predeterminados por la Asamblea Legislativa o porque tal bien es producto o resultado de una conducta prohibida por ley.[11] En ese esquema, le corresponde exclusivamente al Poder Legislativo determinar bajo qué circunstancias, condiciones y procedimientos particulares el Estado está facultado para confiscar una propiedad involucrada en una actividad delictiva, dentro de los parámetros constitucionales aplicables.[12] En este ejercicio, la Asamblea Legislativa podría instituir el proceso de confiscación bajo una de **dos modalidades**: (1) mediante una confiscación de carácter criminal, conocida como confiscación *in personam*; o (2) por vía de una confiscación de índole civil, mejor conocida como confiscación *in rem*.[13]

En el caso de que la Asamblea Legislativa opte por la primera modalidad, instituiría entonces la confiscación como una **penalidad adicional** contra una persona que ha sido convicta de delito. Es por esto, que la confiscación *in personam* forma parte integral del procedimiento criminal, ya que se trata de una acción

---

[11] Figueroa Santiago v. ELA, 2021 TSPR 121, 207 DPR ___ (2021); Ford Motor v. ELA, 174 DPR 735, 741 (2008); Suárez v. ELA, 162 DPR 43 (2004); Del Toro v. ELA, 136 DPR 973, 980-981 (1994).

[12] En el caso de Puerto Rico, el poder de confiscación del Estado está supeditado a las exigencias constitucionales incluidas en el Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. PR, LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, USCA Enmd. V y XIV, las cuales garantizan que ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley.

[13] Mapfre PRAICO, *et al*. v. ELA, 188 DPR 517, 525 (2013); Coop. Seg. Múlt. v. ELA, 180 DPR 655, 664 (2011).

directa contra el propietario o poseedor de la propiedad a ser incautada y cuya procedencia va a depender ineludiblemente de que la persona salga culpable del delito imputado. Únicamente en esas circunstancias se le podría confiscar la propiedad como una sanción adicional. Por lo tanto, bajo este procedimiento, el involucramiento de la persona en la actividad delictiva, y **eventual convicción**, es el fundamento que da base a la confiscación de la propiedad. En otros términos, en la medida en que el Estado no pueda probar la culpabilidad de la persona más allá de duda razonable, la confiscación no será válida.

Por otra parte, si el Poder Legislativo decidiera instituir la segunda modalidad de confiscación, se establecería entonces un procedimiento civil *in rem* que va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta.[14] Por ello, la pregunta a dilucidar bajo este procedimiento es la siguiente: ¿la propiedad confiscada fue utilizada para la comisión de una actividad delictiva? Siendo así, **bajo la modalidad de confiscación in rem la interrogante de quién utilizó la propiedad es, como regla general, impertinente porque el objetivo principal de esta acción es demostrar que la propiedad fue utilizada en una actividad prohibida**

---

[14] Coop. Seg. Mult. v. ELA, supra, pág. 664 (2011). López v. Secretaria, 162 DPR 345, 352 (2004); Negrón v. Srio. de Justicia, 154 DPR 79,87 (2001).

**por ley, independientemente de quién lo hizo**. En ese sentido, no se trata de adjudicarle a la propiedad la capacidad de delinquir y tratarla como la autora de un delito, sino de establecer mediante preponderancia de prueba que la propiedad fue empleada en la comisión de una actividad ilegal. Conforme con ello, en todos los casos de confiscación resueltos por esta Curia reiteramos que los únicos elementos pertinentes a la determinación de si procede una confiscación civil son los siguientes: (1) si existe prueba suficiente y preponderante de que se cometió un delito y (2) si existe un nexo entre la comisión del delito y la propiedad confiscada.[15]

Nótese que contrario a la confiscación *in personam*, **la confiscación *in rem* es una acción completamente separada e independiente del procedimiento criminal que se dilucida contra el presunto autor del delito**. Por ello, la confiscación civil podría prevalecer aun cuando el Estado no haya obtenido un resultado favorable en el proceso penal. Esto, pues, como mencionáramos, **el enfoque en la confiscación civil no es si la persona incurrió en un delito, sino si la propiedad fue utilizada en una actividad ilegal** (e.g. si determinado vehículo de motor fue utilizado para transportar droga, independientemente

---

[15] Figueroa Santiago v. ELA, *supra*, en la pág. 6; Suárez v. ELA, 162 DPR 43, 52 (2004); Del Toro Lugo v. ELA, *supra*, pág. 983; Pueblo v. González Cortés, 95 DPR 164, 171 (1967).

de quién la transportó).[16] En ese escenario, el derecho del Estado a tomar la propiedad surge, precisamente, de ese uso indebido.

En el caso particular de Puerto Rico, la Asamblea Legislativa históricamente ha optado por la confiscación en su modalidad *in rem*.[17] Así, cónsono con la doctrina discutida, reiteradamente este Tribunal aludió a las distinciones típicas entre la confiscación civil y la confiscación criminal. No obstante, **esa discusión se limitó a una referencia automática, casi dogmática, como parte de un repaso doctrinal del proceso de confiscación y la cual nunca tuvo un impacto real en la adjudicación de las controversias que hemos considerado hasta el presente concerniente al tema de confiscación**.[18] Esto hasta tal punto de crear cierta confusión entre ambos tipos de confiscaciones.

Al momento de adjudicar las controversias suscitadas bajo las leyes de confiscaciones anteriores, y a pesar de que estas establecían la naturaleza *in rem* del procedimiento, este Tribunal siempre partió de la premisa fundamentada de que la Asamblea Legislativa tenía la intención de condicionar la acción civil de confiscación al resultado de la acción penal. Es por ello que

---

[16] Esto sujeto a las correspondientes defensas reconocidas en nuestro ordenamiento (e.g. tercero inocente).

[17] Véanse Ley Uniforme de Confiscación de Vehículos, Bestias y Embarcaciones, Ley Núm. 39 de 4 de junio de 1960, 34 LPRA ants. secs. 1721 y 1722 (derogada); Ley Uniforme de Confiscaciones de 1988, Ley Núm. 93 de 13 de julio de 1988 34 LPRA ants. secs. 1723 - 1723(p) (derogada), y la Ley Uniforme de Confiscaciones de 2011, *supra*.

[18] Véanse, Coop. Seg. Mult. v. ELA, *supra*, págs. 664-665; Del Toro Lugo v. ELA, *supra*, págs. 981-983.

consistentemente este Tribunal utilizó la doctrina de cosa juzgada, en su modalidad de impedimento colateral por sentencia, para anular toda confiscación que estuviera acompañada de un dictamen favorable al imputado en el proceso penal. Así, se avaló la disposición sumaria de las demandas de impugnación de confiscación sin una adjudicación en sus méritos, simplemente basados en los acontecimientos suscitados en la esfera penal. De esta forma, este Foro le brindó a la confiscación **civil** un tratamiento paralelo y fundamentado en las características esenciales de una confiscación **criminal**. Dicho tratamiento, a su vez, tuvo el efecto de igualar ambas modalidades de confiscación, a pesar de que la confiscación civil, o su respectiva impugnación, no se llevaba a cabo como parte del proceso criminal en contra de una persona. Veamos.

B. **La doctrina de impedimento colateral por sentencia y la confiscación civil**

Sabido es que la doctrina de impedimento colateral por sentencia opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y la determinación es **concluyente** en un segundo pleito entre las **mismas partes**.[19] Es decir, la aplicación de esta doctrina depende de que un hecho fundamental en un proceso actual haya sido **expresamente** dilucidado como un *elemento clave* en un

---

[19] Coop. Seg. Mult. v. ELA, 180 DPR 655, 672-673 (2011)

proceso anterior mediante una sentencia legítima y final entre las mismas partes.[20] De ese ser el caso, la doctrina de impedimento colateral por sentencia evita que las partes tengan la necesidad de litigar nuevamente un hecho ya adjudicado entre ellas en un dictamen anterior.[21]

En el contexto específico de las confiscaciones, este Tribunal utilizó esta **doctrina estatutaria** para concluir que la absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto para el caso criminal como para el de confiscación, de que la propiedad **no fue utilizada** en una actividad ilícita. Por ello, desde Carlo v. Srio. de Justicia, 107 DPR 356 (1978), este Foro determinó que "[l]a doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron **hechos necesariamente decisivos** para el segundo".[22] En esa ocasión, este Tribunal específicamente delimitó el alcance de esta normativa a aquellas circunstancias en las que, efectivamente, se hubiese dado una absolución en

---

[20] Por "hecho necesario" o "elemento clave" nos referimos a que ese hecho que se pretende identificar en el segundo proceso como uno previamente adjudicado, haya sido **necesario** y **fundamental** en el razonamiento de la sentencia emitida por el Tribunal en el primer proceso. Sólo así, se podría establecer en estricto rigor jurídico, que ese hecho, en efecto, fue debidamente adjudicado mediante sentencia final y firme. Véanse, Beníquez v. Vargas, 184 DPR 210, 225-226 (2012); Presidential v. Transcaribe, 186 DPR 263, 276-277 (2012).

[21] E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Vol. II, San Juan, Ed. Forum, 1992, págs. 376-385.

[22] Carlo v. Srio. de Justicia, *supra*, pág. 363.

los méritos que inevitablemente comprendiera la adjudicación de la cuestión central de que no se utilizó el objeto confiscado en una actividad delictiva.[23] Particularmente, el Tribunal expresó lo siguiente:

> La decisión que hoy tomamos está **estrictamente ceñida** a la situación de derecho que se produce al concurrir circunstancias determinantes, a saber: que el acusado es dueño del vehículo confiscado; **que su absolución en los méritos inevitablemente comprende la adjudicación de la cuestión central de que no utilizó el vehículo para transportar material prohibido**.[24] (Énfasis Suplido).

A pesar de esta delimitación, la realidad fue otra. Desde entonces, esta Curia aplicó la doctrina de impedimento colateral por sentencia a escenarios distintos al antes mencionado, y cuyo efecto directo consistió en condicionar la continuación de la acción civil de confiscación al resultado de la acción penal, independientemente de si en el proceso criminal se adjudicó o no en los méritos el hecho central de si la propiedad confiscada fue utilizada o no en una actividad prohibida por ley. Por ejemplo, en Del Toro v. ELA, 136 DPR 973 (1994), este Tribunal sostuvo que no procedía continuar con el proceso de confiscación de un vehículo de motor propiedad de un tercero cuando una determinación de no causa probable para acusar advino final y firme. Además, en esa ocasión, se determinó que no procedía sostener la confiscación cuando el proceso penal concluía luego del sobreseimiento del caso a raíz de la supresión

---

[23] Íd., págs. 364-65.
[24] Íd. (Énfasis suplido).

de la única evidencia delictiva ocupada mediante un registro ilegal. Bajo ese escenario el Tribunal concluyó que

> la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida hecha en el procedimiento penal por el delito que da base a la confiscación, constituiría cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia.[25]

Aunque con un resultado distinto, pero cónsono con la tendencia de exigir un dictamen de culpabilidad en el proceso penal como condición necesaria para continuar el proceso civil de confiscación, en First Bank, Univ. Ins. Co. v. ELA, 156 DPR 77 (2002), este Tribunal determinó que la ausencia de causa probable en cuanto al poseedor del vehículo de motor confiscado, hijo del dueño registral, no impedía la confiscación de la propiedad, ya que uno de los pasajeros se había declarado culpable. De esta manera, esta Curia negó la aplicación de la doctrina de impedimento colateral por sentencia y ordenó la continuación del proceso de confiscación. No podemos pasar por alto que este Foro reconoció, incluso, la improcedencia de la anulación automática del proceso civil de confiscación basado en un resultado favorable en el proceso penal. Sobre este particular, este Foro expresó lo siguiente:

---

[25] Del Toro v. ELA, *supra*, pág. 997.

La aplicación de la doctrina de impedimento colateral no afecta el hecho principal de que la confiscación es un procedimiento de carácter in rem, es decir, va dirigido contra la cosa misma y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre ésta. Por esto, **el impedimento colateral no aplica de manera automática al impugnar la confiscación del vehículo. Aunque el poseedor del vehículo resulte absuelto de los cargos imputados, esto no es en sí mismo suficiente para declarar inválida la confiscación. Lo determinante es si alguna actividad delictiva se ha cometido en el vehículo o mediante el uso del vehículo**, aunque la misma no haya sido cometido por el poseedor o conductor del mismo. (Énfasis Suplido).[26]

Ahora bien, en Suárez v. ELA, 162 DPR 43 (2004), este Tribunal, alcanzó igual conclusión en acorde con la tendencia de exigir un fallo o veredicto de culpabilidad para validar toda confiscación. En ese momento, este Tribunal determinó que la doctrina de impedimento colateral por sentencia impedía la continuación del proceso civil de confiscación en todo aquel caso en que los cargos criminales hubieran sido desestimados por incumplimiento con los términos de juicio rápido. En esta ocasión, los cargos criminales habían sido desestimados porque el Ministerio Público no cumplió con el término estatutario para la celebración de la Vista Preliminar. Transcurrido más de dos años sin la presentación de nuevos cargos criminales, este Tribunal entendió que procedía declarar con lugar la demanda de impugnación de confiscación ante la presunta dejadez reflejada por el Estado en el proceso penal.

---

[26] First Bank, Univ. Ins. Co. v. ELA, *supra*, pág. 83. (Énfasis suplido).

Cuatro años más tarde, este Foro resolvió dos (2) casos en los que reconoció dos escenarios adicionales en los cuales aplicaría automáticamente la doctrina de impedimento colateral por sentencia y que, consecuentemente, imposibilitaban la continuación de la acción civil de confiscación basado en el resultado del proceso penal, a saber: Ford Motor v. ELA, 174 DPR 735 (2008) y Díaz Morales v. Dpto. de Justicia, 174 DPR 956 (2008).

En Ford Motor v. ELA, *supra*, la persona acusada se había declarado culpable por cargos de posesión de drogas y cumplió con todos los requisitos de un programa de desvío, por lo que el foro primario había ordenado el archivo y sobreseimiento del caso. Ante tales circunstancias, este Tribunal estableció que "el archivo y sobreseimiento de una acusación criminal al amparo de un programa de desvío y rehabilitación consti[tuía] cosa juzgada en su modalidad de impedimento colateral por sentencia en una acción civil de impugnación de confiscación".[27]

En Díaz Morales v. Dpto. de Justicia, *supra*, caso que involucraba a un menor en circunstancias análogas a las expuestas en el párrafo anterior, resolvimos que procedía declarar ha lugar una demanda civil de impugnación de confiscación una vez el menor cumpliera con el contrato de desvío y obtuviera un archivo

---

[27] Ford Motor v. ELA, *supra*, pág. 738.

definitivo de la causa penal. Según razonaron los miembros de este Foro en aquel entonces, "una vez se archiva la denuncia, según los términos del programa, se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del cual depende la confiscación: la comisión de un acto delictivo".[28]

Finalmente, en Coop. Seg. Mult. v. ELA, 180 DPR 655 (2011), atendimos la controversia sobre qué efecto tiene sobre el procedimiento civil de confiscación la muerte de una persona que presuntamente utilizó la propiedad confiscada en un acto delictivo. Ante esta interrogante, y aún vigente la Ley Uniforme de Confiscaciones de 1988, resolvimos que procedía anular el proceso confiscatorio en la medida que la muerte de la persona imputada de delito extinguía la acción penal. **Una vez más, este Tribunal le impregnó un carácter criminal a la confiscación de naturaleza civil al no avalar la confiscación sin que alguien hubiese sido convicto de delito.**[29]

En resumen, durante la vigencia de la Ley Uniforme de Confiscaciones de 1960 y la Ley Uniforme de Confiscaciones de 1988 reconocimos varias excepciones que automáticamente anulaban el proceso civil de confiscación basado en las incidencias suscitadas en el proceso

---

[28] Díaz Morales v. Dpto. de Justicia, *supra*, págs. 962-963.

[29] No hay duda que, en aquel momento, ignoramos que la confiscación podía justificarse en la medida que el vehículo hubiera sido utilizado en una actividad delictiva, independientemente de que no hubiera podido instarse un proceso criminal contra una persona producto de su muerte. Tal proceder equiparó la confiscación *in rem* a la confiscación *in personam.*

criminal. Esto, sin que hubiera una dilucidación en los méritos sobre la controversia específica concerniente al proceso civil sobre si la propiedad confiscada fue utilizada en alguna actividad prohibida por ley. De esta manera, previo a la aprobación de la nueva ley de confiscaciones había un "**decidido desarrollo** de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito".[30]

C. **Fundamentos de la jurisprudencia anterior emitida por este Tribunal**

En este punto resulta meritorio destacar los fundamentos que sustentaron los pronunciamientos anteriores aquí repasados en los que, como vimos, este Tribunal constantemente condicionó la continuación del proceso civil de confiscación a lo acontecido a nivel penal. Como hemos señalado en ocasiones pasadas, y como explicaremos a continuación, estos estuvieron basados en **dos (2) premisas** inarticuladas o discutidas a profundidad en las opiniones de entonces que hoy, conforme a las disposiciones de la Ley Uniforme de Confiscaciones de 2011, *supra*, indudablemente cobran particular importancia: (1) en el presunto carácter "punitivo" del proceso de confiscación según estatuido en la legislación entonces vigente; y (2) en la voluntad legislativa del

---

[30] Coop. Seg. Mult. v. ELA, *supra*, pág. 676. (Énfasis suplido).

momento de vincular el proceso civil de confiscación al proceso penal.

*Primero*, no hay duda que un repaso de la jurisprudencia emitida por este Tribunal durante la vigencia de las leyes derogadas de confiscaciones de 1960 y 1988 nos lleva a constatar que, en efecto, este Foro le adjudicó constantemente un carácter "punitivo" al proceso de confiscación y lo caracterizó como un "castigo adicional" a la pena. Sin embargo, surge que esta Curia alcanzó dicha conclusión sin consignar razonamiento alguno y basado exclusivamente en el fin de la Asamblea Legislativa de disuadir la actividad criminal.[31] En otros términos, para ese entonces fue suficiente el que la legislación mencionara que tenía un objetivo disuasivo para que, sin mayor análisis y consideración, este Tribunal calificara el proceso de confiscación como uno punitivo.

Ante tal objetivo, y la **<u>expresa</u>** intención legislativa de entonces de vincular la causa criminal contra el presunto autor del delito y la acción civil de confiscación, según discutiremos a continuación, este Tribunal evitó adoptar la clara doctrina federal dirigida

---

[31] Véase, e.g., <u>Coop. Seg. Mult. v. ELA</u>, *supra*, pág. 680, donde este Tribunal se expresó en los siguientes términos:

> El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al delincuente con la pérdida de su propiedad, además de la posible pérdida de su libertad. A ello se refiere la Legislatura cuando habla del propósito disuasivo de la confiscación.

a establecer si un proceso de confiscación puede calificarse como "punitivo" y "criminal" en su fin, aun cuando el Poder Legislativo lo haya estatuido como un proceso estrictamente civil. Por entender que el análisis de la doctrina federal es fundamental para la resolución correcta de la controversia que presenta este caso, no la pasaremos por alto.

*Segundo*, la jurisprudencia pasada emitida por este Tribunal, se sustentó en **la intención legislativa contemporánea de vincular el proceso civil de confiscación al proceso penal**, según evidenciado en dos (2) instancias distintas durante la vigencia de la Ley Uniforme de Confiscaciones de 1988. De entrada, hallamos que la Asamblea Legislativa tuvo la intención de promulgar una legislación que no fuera contraria a los pronunciamientos que este Tribunal había formulado previo a 1988. Sobre este particular, nótese que la Asamblea Legislativa de ese tiempo específicamente consignó en el Informe Conjunto del Proyecto del Senado 1529 de 20 de mayo de 1988 que nada de lo contenido en lo que eventualmente sería la Ley Uniforme de Confiscaciones de 1988 alteraba la normativa adoptada hasta ese momento por este Tribunal Supremo en materia de confiscación.[32] Esto

---

[32] Véase, *Informe Conjunto del P. del S. 1529 de las Comisiones de lo Jurídico, de Transportación y Obras Públicas y de Hacienda del Senado de Puerto Rico de 20 de mayo de 1988*, 10ma. Asamblea Legislativa, 4ta Sesión Ordinaria, el cual en la página siete expresamente establece que "[n]ada en el P. del S. 1529 modifica la interpretación restrictiva a favor de la propiedad confiscada que el tribunal le ha dado a las disposiciones legales y vigentes sobre

incluía, claro está, la norma establecida en Carlo v. Srio. de Justicia, *supra*, respecto a la aplicación de la doctrina de impedimento colateral por sentencia al procedimiento civil de confiscación, basado en el resultado favorable en la causa criminal.

Por otra parte, es importante recordar que en el 2000 la Asamblea Legislativa aprobó la Ley Núm. 32-2000, la cual enmendó la Ley Uniforme de Confiscaciones de 1988, para disponer que el resultado de la acción penal no sería impedimento, ni tendría efecto de cosa juzgada sobre la acción civil de confiscación.[33] Tres (3) años más tarde, esta enmienda fue derogada mediante la Ley Núm.

---

confiscación. Vázquez Fontánez v. Tribunal Superior, 103 D.P.R. 396 (1974); Carlo v. Secretario de Justicia, 107 D.P.R. 356 (1978)".

[33] Véase, Art. 2(c) de la Ley Núm. 32-2000 (2000 Leyes de Puerto Rico 376). El mencionado artículo establecía lo siguiente:

> Naturaleza de la acción. – El resultado favorable al acusado o imputado en cualquier de las etapas de la acción criminal no será impedimento para, ni tendrá efecto de cosa juzgada sobre, la acción civil de confiscación, aunque ésta se base en los hechos imputados en la acción penal. Íd.

Sobre este particular, la parte expositiva de la Ley Núm. 32, *supra*, mencionaba lo siguiente:

> Aun cuando la doctrina jurisprudencial sobre la materia es clara, en nuestra jurisdicción se ha creado una gran confusión a raíz de las opiniones emitidas por el Tribunal Supremo. La presente medida va encaminada a precisar la naturaleza de la acción confiscatoria y a revisar otros aspectos de conformidad a la experiencia habida en la implantación de la Ley Núm. 93, antes citada.
>
> Consideramos que el resultado de la acción penal no debe ser impedimento, ni tener efecto de cosa juzgada, sobre la acción civil de confiscación, y para así establecerlo, se enmienda la Ley Núm. 93, antes citada, como se propone adelante.

Véanse, además: *Informe del P. de la C. 2621 de la Comisión de lo Jurídico de la Cámara de Representantes de 5 de noviembre de 1999*, 13era Asamblea Legislativa, 6ta Sesión Ordinaria, y la *Ponencia del Departamento de Justicia de 28 de septiembre de 1999 sobre el P. de la C. 2621.*

18-2003. Esto porque, según la intención y razonamiento de la **entonces** Asamblea Legislativa, era necesario ajustar el derecho positivo conforme a lo resuelto por este Tribunal en Carlo v. Srio. de Justicia, *supra*, y Del Toro Lugo v. ELA, *supra*.[34] De hecho, según surge del Informe sobre el Proyecto de la Cámara 1972 de la Comisión de la Jurídico del Senado de Puerto Rico, eventual Ley Núm. 18, *supra*, esta medida pretendía,

> resolver la situación surgida con la Ley Núm. 32, supra, a los fines de disponer que la absolución en los méritos de una persona en una causa criminal tendrá el efecto de hacer nula una confiscación de un vehículo hecha por el Estado a raíz de los mismos hechos que dieron lugar a su procesamiento criminal, en consideración a la doctrina constitucional de cosa juzgada en su modalidad de impedimento colateral por sentencia.
>
> Tras una absolución en el caso criminal o determinación de no causa en la vista preliminar que ha advenido final y firme no existen tales elementos para sostener la confiscación en el caso civil por lo cual es forzoso concluir la improcedencia de continuar con el mismo.[35]

Como puede observarse, en aquel momento, la Asamblea Legislativa plasmó claramente su intención de reconocer la normativa adoptada por este Tribunal conforme a lo establecido originalmente en el historial legislativo de la Ley Uniforme de Confiscaciones de 1988. Es decir, afirmativamente avaló el que la acción civil de

---

[34] Véase, Exposición de Motivos de la Ley Núm. 18-2003 (2003 (Parte 1) Leyes de Puerto Rico 64).

[35] Informe sobre el P. de la C. 1972 de la Comisión de lo Jurídico del Senado de Puerto Rico, 14ta Asamblea Legislativa, 5ta Sesión Ordinaria, págs. 1-3. Aclaramos que, contrario a lo expresado por la Asamblea Legislativa en el citado extracto, la doctrina de impedimento colateral por sentencia es de índole **estatutario**.

confiscación estuviera condicionada al resultado del proceso penal. Conforme a ello, los casos resueltos bajo la Ley Uniforme de Confiscaciones de 1988, particularmente los resueltos posterior al 2003, **respondieron a esa intención legislativa**. Así lo reconoció este Tribunal en Coop. Seg. Mult. v. ELA, *supra*, donde se expresó que, a la luz de las disposiciones de la entonces vigente Ley Uniforme de Confiscaciones de 1988, lo siguiente:

> **La Asamblea Legislativa ha reconocido el vínculo entre la causa criminal contra el presunto autor del delito base y la acción de confiscación**. De igual forma, la ley vigente [Ley Uniforme de Confiscaciones de 1988] coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley Núm. 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones para eliminar el inciso que añadió la Ley Número 32 de 14 de enero de 2000 que disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. **La Exposición de Motivos de la Ley Núm. 18 refleja con gran claridad el cambio en el modo de pensar en la Asamblea Legislativa y su decisión de vincular la causa criminal contra el presunto autor del delito con el proceso civil de confiscación**. (Énfasis Suplido).[36]

Cónsono con estos pronunciamientos, a continuación, examinamos minuciosamente la actual Ley Uniforme de Confiscaciones de 2011, de modo que lleguemos a la correcta interpretación del estatuto y podamos resolver si subsiste la intención legislativa reflejada en la derogada Ley Uniforme de Confiscaciones de 1988 y sus

---

[36] Coop. Seg. Mult. v. ELA, *supra*, pág. 677. (Énfasis suplido y citas omitidas).

posteriores enmiendas. Es decir, si surge de las disposiciones de la Ley Uniforme de Confiscaciones de 2011 y de su historial legislativo la intención de la Asamblea Legislativa de condicionar el proceso civil de confiscación al resultado de la acción penal. Además, analizaremos si, a la luz de legislación vigente, persiste el objetivo disuasivo y si ello, de por sí, amerita que continuemos calificando como "punitivo" el proceso de confiscación.

D. **La Ley Uniforme de Confiscaciones de 2011**

Actualmente, el proceso de confiscación en Puerto Rico se rige por la Ley Uniforme de Confiscaciones de 2011,[37] la cual establece un procedimiento uniforme para todos los casos de confiscación en nuestra jurisdicción, independientemente de la agencia involucrada y el fundamento para la misma.[38] De acuerdo a esta legislación, el Estado puede ocupar y hacer suya toda propiedad que sea utilizada durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos se encuentren tipificados en algún estatuto confiscatorio.[39]

---

[37] Ley Núm. 119-2011, según enmendada, 34 LPRA sec. 1724 *et seq*.

[38] Véase, Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra.* (2011 (Parte 2)Leyes de Puerto Rico 1761).

[39] Véase, Art. 9 de la Ley Uniforme de Confiscaciones de 2011, *supra*, 34 LPRA sec. 1724f, el cual dispone íntegramente lo siguiente:

Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se

Entre las nuevas disposiciones incluidas en la Ley Uniforme de Confiscaciones de 2011, *supra*, y pertinentes a este caso, encontramos que la Asamblea Legislativa expresamente dispuso el carácter **independiente** del procedimiento de confiscación con relación a cualquier otro proceso. Al respecto, el Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*, establece como política pública "la naturaleza *in rem* de las confiscaciones, **independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza**".[40] Cónsono con esta política pública, el Poder Legislativo, en la versión de la aprobada medida, reiteró que "[e]l proceso de confiscación será uno civil dirigido contra los bienes e **independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados** bajo las disposiciones de cualquier ley que

---

autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación.

Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

[40] Art. 2 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724). (Énfasis suplido).

autorice la confiscación de bienes por parte del Estado".[41]

Así las cosas, la propia legislación específicamente establece el proceso que las partes y los tribunales deben seguir durante la acción civil de impugnación de confiscación. El Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, establece, en lo pertinente, que "**se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso** penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos".[42] En ese contexto, "[e]l **demandante tiene el peso de la prueba** para derrotar la legalidad de la confiscación".[43] Asimismo, dispone que "[p]resentada la contestación a la demanda, el Tribunal ordenará una vista sobre legitimación activa para establecer si el demandante ejercía dominio y control sobre la propiedad en cuestión antes de los hechos que motivaron la confiscación. De no cumplir con este requisito, el Tribunal ordenará la desestimación inmediata del pleito".[44]

En referencia a la derogada Ley Uniforme de Confiscaciones de 1988 y las respectivas interpretaciones formuladas por esta Curia, la Asamblea Legislativa expresó que "[d]icha Ley ha sido objeto de **múltiples**

---

[41] Art. 8 de la Ley Núm. 119-2011 (2011 (Parte 2) Leyes de Puerto Rico 1767).

[42] Art. 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724l). (Énfasis suplido).

[43] Íd. (Énfasis suplido).

[44] Íd.; Véase, además, <u>Mapfre PRAICO</u>, *et al*. v. ELA, *supra*.

**enmiendas e interpretaciones judiciales que han causado confusión en la implantación del estatuto**".[45] Así que para efectos de dispersar cualquier duda sobre su intención de instituir un proceso de confiscación *in rem* y verdaderamente independiente, los legisladores incluyeron en la parte expositiva de la medida lo siguiente aclaración que, por su importancia, citamos *in extenso*:

> En nuestra jurisdicción, la confiscación es una acción civil o *in rem*, **distinta y separada de cualquier acción *in personam*.** La confiscación que lleva a cabo el Estado se basa en la ficción legal de que la cosa es la ofensora primaria. **El procedimiento in rem tiene existencia independiente del procedimiento penal de naturaleza in personam, y no queda afectado en modo alguno por éste.** Los procedimientos de confiscación civil puede llevarse a cabo y culminarse antes de que acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse aun cuando no se haya presentado ningún cargo. **Esto debido a que la acción civil se dirige contra la cosa en sí misma, en general, la culpabilidad o inocencia del propietario es irrelevante en cuanto a la procedencia o no de la confiscación civil.** <u>Goldmith-Grant Co. v. United States</u>, 254 U.S. 505 (1921). <u>Calero-Toledo v. Pearson Yatch Leasing Co.</u>, 416 U.S. 663 (1974). <u>United States v. One Assortment of 89 Firearms</u>, 465 U.S. 354 (1984). [46] (Énfasis Suplido).

Nótese que la referida exposición de motivos consigna, incluso, la jurisprudencia sobre la que fundamenta su intención de instituir una confiscación estrictamente *in rem*. En ninguna parte menciona alguna de las decisiones que este Tribunal emitió durante la

---

[45] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*. (2011 (Parte 2) Leyes de Puerto Rico 1761). (Énfasis suplido).

[46] Exposición de Motivos de la Ley Uniforme de Confiscaciones de 2011, *supra*, pág. 1-2. (2011 (Parte 2) Leyes de Puerto Rico 1762-1763).

vigencia de las legislaciones anteriores de confiscación. De esta manera, la política pública vigente establecida por la Asamblea Legislativa sobre confiscación **se distancia de las respectivas interpretaciones judiciales formuladas en el pasado**, particularmente en lo que respecta a condicionar la acción civil de confiscación al resultado del proceso penal.

De hecho, en la ponencia presentada por el Departamento de Justicia sobre el Proyecto del Senado 897, eventual Ley Uniforme de Confiscaciones de 2011, este expresó "preocupación por definir la naturaleza *in rem* o civil de la confiscación".[47] Indicó que "[a] efectos de evitar la más mínima confusión sobre los aspectos indicados, **es imprescindible introducir un lenguaje claro y preciso que establezca y mantenga distanciados los procesos criminales *in personam* y la confiscación a través de todo el texto de la ley**".[48] Precisamente, eso fue lo que hizo la Asamblea Legislativa en los Arts. 2, 8 y 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, según expusimos.[49]

---

[47] Ponencia del Departamento de Justicia sobre el P. del S. 897 de 23 de julio de 2009, pág. 3.

[48] Íd. (Énfasis suplido).

[49] Consistentemente, ésta ha sido la posición del Poder Ejecutivo sobre este particular. A modo ilustrativo, hallamos que en una medida legislativa anterior dirigida a establecer la Ley Uniforme de Confiscaciones de 2006, se incluyeron disposiciones idénticas a las incluidas en la Ley Uniforme de Confiscaciones de 2011 en cuanto a la **independencia** del proceso de confiscación de cualquier otro proceso penal. Véase, e.g., Art. 8 del P. de la C. 2696, 15ta Asamblea Legislativa, 3ra Sesión Ordinaria. A raíz de esta propuesta, el entonces Secretario de Justicia comentó lo siguiente:

Los términos de esta medida reconocen las diferencias existentes entre el proceso de confiscación *in rem* y

No hay duda que en la legislación actual se estableció un proceso civil *in rem* verdaderamente independiente al proceso penal *in personam*, abandonando así la pasada intención legislativa de vincular ambos procesos. Ante ello, resulta pertinente analizar si, en efecto, el proceso de confiscación confeccionado por el Poder Legislativo tiene un fin punitivo o criminal como se mencionaba en el pasado. De concluir que estamos ante un proceso de confiscación de carácter punitivo dirigido a castigar al presunto autor del delito, el marco de acción de la Asamblea Legislativa para regular su aplicación y procedencia podría verse limitado por aspectos constitucionales aplicables bajo ciertas y limitadas circunstancias.

Sobre este particular, en <u>United States v. Ward</u>, 448 US 242 (1980), la Corte Suprema de los Estados Unidos

---

cualquier acción criminal, o de otra índole, que pueda proceder de los mismos hechos. **Se persigue que, por ejemplo, el Estado pueda proseguir legítimamente con una acción de confiscación contra una propiedad cuando existe prueba suficiente de que la misma ha sido utilizada en actividad delictiva, aun cuando el Estado instar una acción criminal porque no se ha identificado con la certeza suficiente al autor del delito. Nótese que el Estado debe establecer la ocurrencia de una actividad delictiva y su relación con la propiedad confiscada.**

La propuesta legislativa permite atender el absurdo jurídico que impide que el Estado pueda confiscar, por ejemplo, un automóvil con cristales ahumados cuando existe evidencia en su interior, tales como casquillos de bala, que lo vinculan directamente a la comisión de un delito. Nótese que, en este tipo de caso, el Estado conoce la ocurrencia de una actividad delictiva y del uso del vehículo en su consecución. No obstante, no necesariamente se ha identificado al autor del delito, toda vez que los cristales ahumados impiden su identificación.

*Ponencia del Departamento de Justicia de 24 de enero de 2006 sobre el P. de la C. 2696 ante la Comisión de lo Jurídico y Seguridad Pública de la Cámara de Representantes, pág. 4.*

elaboró un estándar de dos partes dirigido, precisamente,

a contestar si un estatuto confiscatorio constituye en sí

una medida punitiva de índole criminal o no. Al respecto,

la Corte Suprema Federal expresó lo siguiente:

> Esta Corte a menudo ha reiterado que la interrogante sobre si una sanción es de índole civil o criminal es un asunto de interpretación estatutaria. Nuestra investigación en este respecto se ha realizado tradicionalmente en dos esferas. Primero, nos hemos dado a la tarea de determinar si el Congreso al establecer la sanción particular indicó expresa o implícitamente su preferencia por una etiqueta o la otra. Segundo, si el Congreso ha indicado la intención de establecer una sanción civil, hemos investigado más a fondo si el esquema estatutario era tan punitivo ya sea en su propósito o en su efecto como negar dicha intención. Respecto a esta última interrogante, hemos establecido que solo "la más clara evidencia" podría ser suficiente para establecer la inconstitucionalidad de una ley basado en dicho argumento.[50]

En otros términos, la conclusión sobre si

determinada sanción es verdaderamente de índole civil o

penal debe estar precedida, en primer orden, de un

análisis sobre si el Poder Legislativo consignó su

---

[50] <u>United States v. Ward</u>, *supra*, págs. 248-249. (Traducción nuestra y citas omitidas). En los propios términos de la Corte Suprema Federal, esta expresó específicamente lo siguiente:

> This Court has often stated that the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction. Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention. In regard to this latter inquiry, we have noted that "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground."

intención, ya sea expresa o implícitamente, de caracterizar esta como una civil o criminal. Es decir, este primer punto del análisis va dirigido específicamente a identificar la etiqueta "civil" o "criminal" que le dio o pretendió dar el Poder Legislativo a la sanción concerniente. Claro está, de concluir que el Poder Legislativo expresó su preferencia por una sanción criminal, resulta académico cualquier análisis posterior.

Empero, si de ese análisis surge la intención del Poder Legislativo de caracterizar determinado procedimiento como civil, procede entonces abordar el segundo punto del examen dirigido a auscultar si ésta es tan punitiva en su propósito o efecto que transforma en una sanción criminal lo que se pretendió imponer como una sanción civil.[51] En esta segunda parte del análisis, es necesario que la parte que formule tal alegación presente **"la más clara evidencia"** de que lo que el Poder Legislativo denominó como civil en realidad constituye una sanción de índole criminal.[52] De no existir tal

---

[51] Íd., pág. 249. ("We turn then to consider whether Congress, despite its manifest intention to establish a civil, remedial mechanism, nevertheless provided for sanctions so punitive as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.'").

[52] Íd. (Traducción nuestra) ("In regard to this latter inquiry, we have noted that 'only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground.'"); págs. 250-251 ("Nor are we persuaded by any of respondent's other arguments that he has offered the 'clearest proof' that the penalty here in question is punitive in either purpose or effect."). Reiterado en United States v. One Assortment of 89 Firearms, 465 US 354, 366 (1984) ("Mulcahey has failed to establish by the "clearest proof" that Congress has provided a sanction so punitive as to

evidencia, lo único que procede es que el Tribunal confirme el carácter civil que le brindó o pretendió brindar, en primera instancia, el Poder Legislativo a la sanción concerniente.

Subsiguientemente, la Corte Suprema de Estados Unidos reafirmó este análisis en United States v. Ursery, 518 US 267 (1996), caso en el cual confirmó su dictamen de United States v. One Assortment of 89 Firearms, 465 US 354 (1984), a los efectos de que un estatuto confiscatorio civil no viola la Quinta Enmienda de la Constitución Federal a aplicarse a un individuo que ha sido absuelto o condenado mediante sentencia, siempre y cuando éste no sea punitivo en su naturaleza.[53] Para sostener tal carácter civil de la confiscación, el Tribunal Supremo de los Estados Unidos examinó los estatutos confiscatorios concernientes mediante el discutido análisis de dos partes. Respecto a la primera parte, la Corte sostuvo que era indudable que el Congreso tuvo la intención de establecer un proceso meramente civil.[54] Siendo así, pasó a la segunda parte del análisis y concluyó que existía "poca evidencia, y mucho menos la prueba más clara requerida" de que el proceso de confiscación establecido por el Congreso era tan punitivo

---

"transfor[m] what was clearly intended as a civil remedy into a criminal penalty.").

[53] United States v. Ursery, supra, pág. 292. ("We hold that these in rem civil forfeitures are neither "punishment" nor criminal for purposes of the Double Jeopardy Clause.").

[54] Íd., págs. 288-290.

en su naturaleza o efecto que lo convertía en una sanción criminal.[55]

Para alcanzar tal conclusión, en United States v. Ursery, *supra*, la Corte Suprema de Estados Unidos destacó varios puntos importantes y pertinentes a nuestra legislación local. *Primero*, expresó el entendido de que las confiscaciones civiles *in rem* históricamente no constituyen un "castigo".[56] *Segundo*, resaltó que en los estatutos confiscatorios concernientes no se requería demostrar intención criminal en el uso de la cosa y aclaró que aun cuando éstos contienen una excepción de tercero inocente, ello de por sí no compele a la conclusión de que se desea castigar a una persona.[57] *Tercero*, señaló que si bien puede decirse que tales estatutos sirven un propósito disuasivo, la realidad es que tal objetivo es válido tanto para procesos de confiscación puramente civiles como para procesos criminales.[58] Finalmente, enfatizó que el solo hecho de que los estatutos confiscatorios estén atados o supeditados a una actividad criminal no es suficiente para establecer mediante "la más clara evidencia" que el proceso denominado como civil realmente es de carácter punitivo en su naturaleza o efecto.[59]

---

[55] Íd., pág. 290. (Traducción nuestra).
[56] Íd., pág. 291.
[57] Íd., págs. 291-292.
[58] Íd., pág. 292.
[59] Íd.

Al extrapolar tal análisis y escrutinio a nivel local con el objetivo de auscultar si el proceso de confiscación establecido en la Ley Uniforme de Confiscaciones de 2011 constituye una sanción meramente civil o penal, no podemos alcanzar otra conclusión que no sea que esta es **puramente civil y remediativa**. Según indicáramos, no hay duda de que la Asamblea Legislativa aprobó la legislación vigente con la intención expresa de establecer un proceso **administrativo** *in rem* de estricto carácter civil e independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza.

La realidad es que un simple repaso de la legislación concerniente evidencia la inexistencia de "la más clara evidencia" que nos lleve a concluir que, en efecto, estamos ante un estatuto de carácter punitivo. Nótese que la ley vigente no requiere demostrar que hubo intención criminal por parte de la persona que utilizó la cosa de forma ilícita para que proceda la confiscación. Como explicáramos, en el proceso civil estatuido únicamente se requiere demostrar la conexión entre la propiedad confiscada y su uso en una actividad prohibida por ley, independientemente de quién la utilizó o si tenía tal intención o no.

Además, aunque la legislación vigente podría permitir que se presente evidencia de la inocencia del dueño en ciertas circunstancias, esto, por sí solo, no es

suficiente para atribuirle a la legislación un ánimo de castigar. La clara intención de la Asamblea Legislativa de disuadir la actividad criminal, según surge de la ley y de su historial, obligan a concluir que estamos ante una ley de naturaleza **civil y remediativa**. Como bien señalara la Corte Suprema de Estados Unidos, **tal elemento disuasivo de la actividad criminal no es en sí suficiente para categorizar un proceso civil de confiscación como uno de naturaleza criminal**. Pasemos entonces a considerar el efecto que han tenido las enmiendas recientes a la Ley Uniforme de Confiscaciones de 2011, *supra*, respecto a las controversias que surgen a partir de este recurso.

E. **Las enmiendas introducidas a la Ley Uniforme de Confiscaciones de 2011 por la Ley Núm. 287-2018**

A raíz de los criterios discrepantes que han surgido en este Tribunal entorno a la aplicabilidad de la doctrina de impedimento colateral por sentencia en los casos de impugnación de confiscaciones, nuestra Asamblea Legislativa tuvo a bien introducir ciertas enmiendas a la legislación vigente mediante la aprobación de la Ley Núm. 287-2018, *supra*.[60] De entrada, dirigimos nuestra atención a las expresiones que surgen del *Informe Positivo* de la

---

[60] Valga resaltar, que cualquier alusión a la Ley 287-2018, *supra*, se presenta exclusivamente a los fines de ilustrar que la intención de nuestra Asamblea Legislativa, desde que se aprobó la Ley Uniforme de Confiscaciones de 2011, *supra*, ha sido la misma en esta materia. Somos conscientes que los hechos particulares de este caso, ocurridos en el año 2017, preceden la vigencia de las enmiendas que surgen de la Ley Núm. 287-2018, *supra*, cuyo vigor no es de carácter retroactivo. No obstante, enfatizamos que el historial de esta medida legislativa nos ofrece una mirada ilustradora e indispensable en cuanto a la inaplicabilidad de la doctrina de impedimento colateral por sentencia en hechos como los que surgen del pleito de epígrafe.

Comisión de Gobierno de la Cámara de Representantes, en ocasión de considerar el P. del S. 735, eventualmente aprobado como la Ley Núm. 287-2018, *supra*. Expuso la Comisión, que

> [c]on la aprobación de la Ley 119, se intentó subsanar algunas lagunas jurídicas que existían bajo la antigua ley de confiscaciones. No obstante, también **han surgido discrepancias al momento de interpretar la propia Ley 119, particularmente al determinar cuándo procede aplicar la doctrina de Impedimento Colateral por Sentencia**. Por tal razón, este Cuerpo Legislativo considera que es necesario subsanar dichos vacíos y de esta manera **aclarar la intención de la Asamblea Legislativa al promulgar la "Ley Uniforme de Confiscaciones 2011"**. (Énfasis Suplido).[61]

Por otro lado, el informe alude al memorial escrito sometido por el Departamento de Justicia. En particular, el Departamento de Justicia hizo referencia a la diversidad de opiniones que han surgido en este Foro respecto a la aplicabilidad de la doctrina de impedimento colateral por sentencia en los casos de confiscación civil, haciendo referencia particular a las diversas posturas que surgen de nuestra *Sentencia* en Mapfre Preferred Risk Insurance Company, et al v. E L.A., 198 DPR 88 (2017).[62] Consigna el informe positivo, que el Departamento de Justicia "entiende que procede la enmienda propuesta en el Artículo 1 del texto decretativo de la medida donde se propone especificar que los procesos de confiscación pueden proceder y culminar

---

[61] Segundo Informe del P. del S. 735 de la Comisión de Gobierno de la Cámara de Representantes de 8 de noviembre de 2018, 18va Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 3.
[62] Íd., pág. 4.

independientemente del proceso donde el acusado esté involucrado".[63] Así pues, favorecieron una **aclaración sobre aquellas instancias en las cuales <u>sí aplicaría</u> la doctrina de impedimento colateral por sentencia.**[64]

A su vez, el Informe Positivo de la Comisión de Gobierno del Senado, reitera similares posturas al exponer los propósitos principales detrás del P. del S. 735. En concreto, el primer propósito es "...aclarar que, dada la naturaleza civil del proceso de confiscación, **<u>la culpabilidad o inocencia del acusado no deberá tomarse en cuenta en el proceso de confiscación, solo deberá tomarse en cuenta la adjudicación de los hechos en sus méritos</u>".** (Énfasis Suplido).[65] Continúa exponiendo, que proceden las enmiendas a la Ley Uniforme de Confiscaciones de 2011, *supra*, con el fin de aclarar que **<u>la doctrina de impedimento de colateral por sentencia podría aplicarse en los casos de impugnación de confiscación, pero que su aplicación quedaría delimitada al amparo de las prerrogativas de la Asamblea Legislativa</u>.**[66]

Con esto en mente, arribamos a las expresiones consignadas por la Asamblea Legislativa en la Exposición de Motivos de la Ley Núm. 287-2018, *supra*. De entrada, se advierte que las enmiendas posteriores a la Ley Uniforme de Confiscaciones de 2011 han provocado lagunas que han

---

[63] Íd.
[64] Íd.
[65] Informe Positivo del P. del S. 735 de la Comisión de Gobierno del Senado de 9 de diciembre de 2017, 18va Asamblea Legislativa, 2da Sesión Ordinaria, pág. 2.
[66] Íd., pág. 3.

dificultado su aplicación por parte del Departamento de Justicia.[67] Además, resaltan que este Tribunal Supremo se vio repetidamente "en una encrucijada jurídica" a la hora aplicar los conceptos que emanan del estatuto rector.[68] Por ello, manifestaron la necesidad de esta legislación rectificadora, con el fin de "subsanar dichos vacíos y de esta manera **aclarar la intención de la Asamblea Legislativa** al promulgar la "Ley Uniforme de Confiscaciones de 2011".[69] Contemplando el debate que ha sido provocado por las interpretaciones variadas de la ley, la Asamblea Legislativa dispuso que esta legislación tendría el efecto de "aclarar la intención legislativa al respecto, **para así ponerle fin a esta controversia**".[70]

Así pues, mediante la Ley Núm. 287-2018, *supra*, la Asamblea Legislativa enmendó sustancialmente el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011, por lo cual citamos del estatuto *in extenso*:

> El proceso de confiscación será uno civil dirigido contra los bienes e independiente de cualquier otro proceso de naturaleza penal, civil o administrativa que se pueda llevar contra el dueño o el poseedor de los bienes ocupados bajo las disposiciones de cualquier ley que autorice la confiscación de bienes por parte del Estado. Los procesos de confiscación bajo esta Ley podrán llevarse a cabo y culminarse antes de que se acuse, se declare culpable o absuelva al acusado. **Debido al carácter civil del proceso, la culpabilidad o inocencia del acusado no deberá tomarse en**

---

[67] Exposición de Motivos de la Ley Núm. 287-2018 (2018 (Parte 3) Leyes de Puerto Rico 2917)
[68] Íd.
[69] Íd.
[70] Íd.

**cuenta en el proceso de confiscación, solo deberá tomarse en cuenta la adjudicación de los hechos en sus méritos. Lo determinante en este proceso será si el bien en cuestión fue utilizado en la comisión de un delito independientemente del resultado de la acción criminal o de alguna otra naturaleza.**

Se dispone que, **no será de aplicación en los procesos de confiscación, la doctrina de Impedimento Colateral por Sentencia en las siguientes instancias:**

a)     Cuando el acusado haya hecho alegación de culpabilidad;

b)     cuando el acusado se someta a un programa de desvío;

c)     cuando el acusado fallezca antes o en medio del proceso que se esté llevando a cabo contra su persona;

d)     **en ausencia de alguna adjudicación expresa en otro proceso penal, civil o administrativo, que se celebre por los mismos hechos que dieron lugar a la confiscación, en la cual se determine que el bien confiscado no fue utilizado en la comisión de algún delito;** y

e)     en cualquier otra instancia que no se cumplan con los requisitos de la doctrina. (énfasis suplido).[71]

Como podemos apreciar, el efecto de esta legislación fue **<u>reconocer y permitir</u>** la aplicación de la doctrina de impedimento colateral por sentencia, en los casos de confiscación, salvo que se encuentren presentes ciertas circunstancias enumeradas. Lo anterior reafirma la postura que hemos sostenido reiteradamente en este tema, pues el lenguaje utilizado advierte la naturaleza distinta y separada del proceso de impugnación de una confiscación *vis a vis* cualquier otra acción civil, criminal o administrativa. Demuestra, que, a fin de

---

[71] Art. 8 de la Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724e).

cuentas, el único elemento decisivo es si el bien confiscado fue utilizado o no como parte de la comisión de un delito. Además, demuestra que previo a estas enmiendas la doctrina de impedimento colateral sencillamente no era compatible con nuestro ordenamiento respecto a las confiscaciones, pues la Asamblea Legislativa no la había reconciliado con el procedimiento estatuido, como así lo hizo a partir de la aprobación de la Ley Núm. 287-2018, *supra*.

Lamentablemente, la resistencia de algunos miembros de este Foro en acatar el claro mandato del estatuto en controversia forzó un ejercicio legislativo otrora innecesario. A saber, la aprobación de la Ley Núm. 287-2018, *supra*, de otro modo innecesario. Ello, pues **<u>su efecto primordial fue el de aclarar asuntos que nunca estuvieron en duda</u>**. Incansablemente, sostuvimos que el esquema procesal y sustantivo que surge de la Ley Uniforme de Confiscaciones de 2011, *supra*, resultaba del todo incompatible con la aplicación de la doctrina de impedimento colateral por sentencia. Por el contrario, es a partir de la aprobación de la Ley Núm. 287-2018, *supra*, que nuestra Asamblea Legislativa reconoce aquellas instancias en las cuales sí procedería la aplicación de esta doctrina estatutaria.

Es decir, la vigencia prospectiva de la Ley Núm. 287-2018, *supra*, en conjunto con la intención legislativa de delimitar el uso de la doctrina de impedimento

colateral por sentencia, de conformidad con las prerrogativas constitucionales del Poder Legislativo, apuntan a lo que siempre hemos sostenido, a saber: **que la Ley Uniforme de Confiscaciones de 2011, *supra*, en su redacción originaria, concibió un proceso de confiscación civil que existe de forma independiente y no relacionada a cualquier acción criminal por estos hechos, sin excepción**. Naturalmente, en aquellos casos que surjan posterior a la vigencia de las enmiendas de la Ley 287-2018, *supra*, habrá que atender los presuntos efectos de esa legislación, lo cual no nos ocupa en el día de hoy.

### III.

Los hechos que motivaron este pleito representan un ejemplo paradigmático del escenario contemplado por nuestra Asamblea Legislativa. Aquí, se inició un procedimiento criminal, el cual concluyó con una determinación de no causa en la vista de causa probable para arresto, la cual no fue recurrida por el Ministerio Público. No obstante, coetáneamente con el procedimiento criminal, se confiscó un vehículo que el Estado vinculó con la comisión de los presuntos hechos delictivos.

Posteriormente, las entidades legitimadas para impugnar esa confiscación procedieron a hacerlo, pero —erradamente— intentaron derrotar la acción del Estado sumariamente y utilizando como fundamento primordial la doctrina de impedimento colateral por sentencia. Es

decir, el único fundamento en derecho estribaba del desenlace de la acción criminal abandonada. Acertadamente, el foro primario, en reconsideración, acogió los argumentos del Estado y aplicó la normativa que pregona nuestra ley de confiscaciones vigente. Más adelante, el foro intermedio, al confrontar el mismo escenario, y en igual posición por ser este un asunto documental y de estricto derecho, adjudicó la controversia similarmente.

**Ante este escenario ⸺idealmente⸺ hubiéramos emitido una opinión, no solamente para confirmar los dictámenes inferiores, sino para pautar que esta es la normativa aplicable a estas controversias**. De esto modo, habríamos adoptado ⸺finalmente⸺las normas que nuestra Asamblea Legislativa ha dictaminado para esta materia. Desafortunadamente, pese a confirmar la correcta aplicación del derecho en este caso, ciertos miembros de este Tribunal obstaculizan el camino para un dictamen mucho más abarcador.

No cabe duda, que los compañeros disidentes fundan su postura en el efecto que le adscriben a la determinación de no causa para arresto *vis a vis* la acción civil de impugnación de confiscación. Colegimos, que de esta determinación algunos miembros de este Foro, presumen que en este caso hubo una adjudicación en sus méritos sobre (1) si ocurrió o no un delito y (2) sobre

si la propiedad fue o no utilizada en conexión con la comisión de un delito. Ciertamente, este debe ser su raciocinio, pues, como elaboramos, la normativa reiterada de este Tribunal establece que los únicos elementos a considerar ante una acción de impugnación de confiscación son los siguientes: (1) si existe prueba suficiente y preponderante de que se ha cometido un delito y (2) si existe un nexo entre la comisión del delito y la propiedad confiscada.[72]

No empece a esto, enfatizamos que los hechos de este caso, al amparo del derecho vigente, condujeron la conclusión correcta. De entrada, sabido es que el propósito de la vista al amparo de la Regla 6 de Procedimiento Criminal, *supra*, surge del mandato constitucional de que los arrestos, de ordinario, se efectúen únicamente cuando exista una determinación de causa probable, amparada en juramento o afirmación, expedida por un magistrado.[73] No obstante, la doctrina establecida por esta Curia aclara que en esta etapa no es necesario establecer categóricamente la existencia de responsabilidad.[74] Es decir, la determinación de causa probable para arresto no constituye una adjudicación final del caso, pues en esta etapa no se establece la

---

[72] Suárez v. ELA, supra, pág. 52; Del Toro Lugo v. ELA, supra, pág. 983; Pueblo v. González Cortés, supra, pág. 171.
[73] Art. II, Sec. 10 de la Constitución de Puerto Rico, Art. II, Sec. 10, Const. PR, LPRA, Tomo I
[74] Pueblo v. Rueda Lebrón, 187 DPR 366, 373 (2012).

culpabilidad o inocencia del sospechoso.[75] Además, es harto conocido que en las vistas de causa probable para arresto no es necesaria la presentación extensa de prueba contra el imputado, requiriéndose evidencia que apunte a algo más que una mera sospecha, pero menos que preponderancia de la prueba.[76]

Visto así, resulta un contrasentido sostener que una determinación de no causa para arresto, en la cual el Ministerio Público no suele presentar el cúmulo de la prueba con la que cuenta, representa una adjudicación en sus méritos que activaría la doctrina de cosa juzgada. Más aun, al considerar que en una determinación de no causa no se exponen, de modo alguno, determinaciones fácticas por parte del tribunal, resulta imposible concluir que allí se excluyó la posibilidad de que la propiedad confiscada fuera utilizada para fines delictivos.

Por ende, surge una discrepancia probatoria entre los procedimientos que algunos miembros sostienen se encuentran íntimamente atados. El procedimiento criminal requiere la presentación de prueba más allá de duda razonable sobre la comisión de todos los elementos del delito y de la conexión del acusado con los mismos.[77] A su vez, el procedimiento de impugnación de confiscación,

---

[75] *Íd.,* págs. 373-74.

[76] E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Investigativa*, San Juan, Ediciones SITUM, 2017, pág. 343.

[77] 32A LPRA Ap. VI, R. 110(f)

concebido en nuestra jurisdicción como una acción civil, meramente requiere establecer los elementos de la causa de acción por preponderancia de la evidencia.[78]

Ahora bien, retornemos al marco estatutario bajo el cual se debe regir esta controversia. Según examinamos, el Artículo 2 de la Ley Uniforme de Confiscaciones de 2011, el cual consigna la política pública del Estado en cuanto a este procedimiento, "sostiene y reafirma la naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza".[79] Como hemos sostenido enfáticamente, esta expresión demuestra sin ambages la intención legislativa de que la acción civil de impugnación de confiscación se encuentre totalmente desvinculada de la acción criminal correspondiente. Este fue el estado de derecho que propulsó la Ley Uniforme de Confiscaciones de 2011, *supra*, cuando fue aprobada.

De esta forma, reafirmamos que bajo esta concepción no es procedente la aplicación de la doctrina de impedimento colateral por sentencia. Por su propia naturaleza, esta doctrina requiere que se consideren en un procedimiento las determinaciones sobre hechos esenciales que se hayan hecho en otro. **Sencillamente, no es posible reconciliar esta figura estatutaria con un**

---

[78] Íd.

[79] Art. 8, Ley Uniforme de Confiscaciones de 2011, *supra*. (34 LPRA sec. 1724 nota).

**procedimiento que ha sido diseñado como independiente de cualquier otra acción penal, civil o administrativa**.

No obstante, no tenemos por qué quedarnos ahí. Cualquier duda que pudiera persistir sobre la aplicabilidad de la figura del impedimento colateral por sentencia quedó irremediablemente superada por el historial que surge de la aprobación de la Ley Núm. 287-2018, *supra*. Bien entendida, **esta legislación reitera la visión de nuestra Asamblea Legislativa desde el año 2011, a saber, que la Ley Uniforme de Confiscaciones de 2011 descartó la aplicación de la doctrina de impedimento colateral por sentencia en los procedimientos impugnatorios de las confiscaciones civiles**. Es más, la Ley Núm. 287-2018, *supra*, va más lejos, pues enumera exhaustivamente las circunstancias en las cuales esta doctrina sí podría ser válidamente levantada en un procedimiento de impugnar una confiscación. Reiteramos, esta normativa no es aplicable a estos hechos.

Al momento de los hechos que dan lugar a este pleito, nuestro ordenamiento descartaba la aplicación de la doctrina de impedimento colateral por sentencia en los procedimientos de impugnación de confiscaciones. Así lo entendió el Estado al instar su oposición a la moción de sentencia sumaria que presentaran Mapfre y Popular Auto. El Estado, acertadamente, aludió al historial de la legislación aplicable como fuente ilustradora del significado correcto de las disposiciones en

controversia. Examinada la postura esbozada por el Estado, el foro primario declinó dictar sentencia sumaria, en reconsideración. Del mismo modo el Tribunal de Apelaciones confirmó la denegatoria del Tribunal de Primera Instancia. Actuaron conforme a derecho.

Nuestro derecho procesal civil promulga una extensa y minuciosa reglamentación de la figura de la sentencia sumaria y la moción que la promueve. Es harto conocido que esta figura promueve la solución justa, rápida y económica de los pleitos civiles cuando estos no presentan controversias genuinas de hechos materiales.[80] Según dispone la propia Regla 36.3(e) de Procedimiento Civil, es solo cuando el tribunal se convenza que no existen hechos esenciales y pertinentes en controversia, que procede dictar sentencia sumariamente, si así procede en derecho.[81] Es decir, aun en un supuesto donde no existan hechos en controversia, no basta meramente con instar una moción de sentencia sumaria para prevalecer, hay que estar asistido por el derecho vinculante. Naturalmente, en la medida que la parte opositora haya controvertido algún hecho material, o, que haya alegaciones afirmativas en la demanda que no hayan sido refutadas, procede la denegación de la solicitud de sentencia sumaria.[82]

---

[80] Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010).
[81] 32A LPRA Ap. V, R. 36.3(e)
[82] Ramos Pérez v. Univisión, supra, pág. 215; Corp. Presiding Bishop v. Purcell, 117 DPR 714, 723 (1986).

En los casos de una acción impugnatoria de confiscación, donde, como ya hemos visto, no puede aplicarse la doctrina de impedimento colateral por sentencia, **resultaría contrario a derecho dictar sentencia sumariamente, únicamente bajo ese fundamento jurídico.** El Artículo 15 de la Ley Uniforme de Confiscaciones de 2011, *supra*, dispone expresamente que "se presumirá la legalidad y corrección de la confiscación independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos".[83] Además, le compete al demandante el peso de la prueba para derrotar la legalidad de la confiscación.[84] Tales disposiciones no se satisfarían al derrotar una impugnación, presumida válida, bajo un supuesto legal que la propia intención de del estatuto descarta como inaplicable.

Por el contrario, de presumirse que el demandante solo cuenta con la doctrina de impedimento colateral por sentencia como fundamento a su favor, procede que el tribunal decline dictar sentencia sumariamente y proceda hacia la adjudicación del caso luego de celebrar las vistas correspondientes o determinar de otro modo a cuál parte asiste el derecho. Precisamente eso fue lo que entendieron procedente los foros ante nos recurridos.

---

[83] Art. 15, Ley Uniforme de Confiscaciones de 2011, supra. (34 LPRA sec. 17241)
[84] Íd.

Adviértase, que la resistencia de algunos miembros de este Foro en aplicar la legislación vigente, tal y como fue ideada por sus autores, forzó a nuestra Asamblea Legislativa a efectuarle enmiendas aclaratorias a un estatuto que no era ambiguo. Este lamentable desenlace se agrava aún más cuando consideramos que se trata de una legislación cuya validez constitucional no está en disputa.[85] **Cabe entonces hacernos una simple pregunta, ¿podría este Tribunal, en cumplimiento con nuestro ordenamiento constitucional y la doctrina de separación de poderes que este pregona, negarse a poner en vigor una legislación válida según fue concebida? Contestamos enfáticamente en la negativa.**

En la materia de confiscaciones civiles, contamos con un ordenamiento abarcador y bien razonado que abona al cumplimiento de la política pública que persiguen los otros poderes de nuestro gobierno. Nuestra legislación vigente obedece a una evolución en la visión y propósito de las confiscaciones civiles. Al igual que nuestros legisladores tuvieron a bien modificar nuestro ordenamiento, al considerar que no continuaba obedeciendo a las realidades de la lucha contra el crimen, así también nosotros debemos ajustar nuestros

---

[85] Como expusiéramos anteriormente, el procedimiento de confiscación civil se encuentra estatuido de conformidad con las protecciones constitucionales contra la privación de la propiedad sin un debido proceso de ley, que emanan del Art. II, Sec. 7 de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. PR, LPRA, Tomo I y la Enmienda Quinta y Catorceava de la Constitución de Estados Unidos, USCA Enmd. V y XIV.

pronunciamientos. Solo así evitamos la disonancia entre los poderes del gobierno, en áreas en las cuales a los tribunales **no nos compete diseñar los procedimientos y remedios a implementarse**.


                              Edgardo Rivera García
                                 Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MAPFRE Preferred Risk Insurance
Co. & Popular Auto

     Peticionario

                    v.

Estado Libre Asociado de Puerto
Rico

     Recurrido

CC-2020-0284

La Jueza Presidenta Oronoz Rodríguez emite una Opinión Disidente a la cual se unen el Juez Asociado señor Estrella Martínez y el Juez Asociado señor Colón Pérez

En San Juan, Puerto Rico, a 24 de junio de 2022.

Desafortunadamente, el Pleno de este Tribunal no alcanzó un acuerdo con el fin de disponer correcta y apropiadamente de la controversia ante nos. Al ser este el proceder, se mantiene vigente una determinación errada del Tribunal de Apelaciones.

Esta era la oportunidad idónea para pautar que una determinación final y firme de no causa para arresto constituye impedimento colateral por sentencia en un procedimiento civil de impugnación de confiscación que se incoó por los mismos hechos que la causa criminal. Asimismo, como parte de esa tesis correspondía considerar la diferencia en estándares probatorios en ambos procesos. En ese sentido, era forzoso concluir que cuando el Estado no cumple con el peso de la prueba

en la vista de causa probable para arresto, este no tiene la posibilidad de probar el hecho material de la ocurrencia de actividad delictiva en el pleito civil de impugnación de la confiscación.

En vista de que este razonamiento no logró el aval mayoritario y de que, de este modo, se sostiene una actuación errónea del foro recurrido, disiento.

Antes de discutir los fundamentos que sustentan mi postura, conviene repasar los hechos de este caso.

**I**

El 14 de junio de 2017, el Estado Libre Asociado de Puerto Rico (Estado) confiscó un vehículo Jeep, Modelo Grand Cherokee Laredo, Tablilla IVN-571, del año 2017, por presuntamente haber sido utilizado en violación del Art. 404 de la Ley Núm. 4 de 23 de junio de 1971, mejor conocida como la Ley de Sustancias Controladas de Puerto Rico, 24 LPRA sec. 2101 *et seq.*[1] Por estos mismos hechos, se presentaron denuncias criminales en contra de los señores Edgardo H. Lugo Morales, Kevin A. Molina Santiago y Giovanni N. Rolón Velázquez en las que se les imputó poseer la sustancia controlada conocida como marihuana.[2] El Tribunal de Primera Instancia celebró la vista de causa probable para arresto. En esta, se presentó el testimonio bajo juramento del agente de la Policía de Puerto Rico, Xavier Bernardi Salinas. Asimismo, se desfilaron varias piezas de prueba documental. Luego de

---

[1] *Orden de confiscación*, Apéndice, pág. 70.
[2] Apéndice, págs. 71-76.

examinar lo anterior, el Tribunal hizo una determinación de no causa en cuanto a los tres imputados.[3] El Estado no recurrió en alzada de dicho dictamen.

Posterior al desenlace del proceso penal, MAPFRE Preferred Risk Insurance Company y Popular Auto, Inc. (en conjunto, los peticionarios) presentaron contra el Estado una demanda sobre impugnación de confiscación ante el Tribunal de Primera Instancia, de conformidad con la Ley Núm. 119 de 12 de Julio de 2011, mejor conocida como la Ley Uniforme de Confiscaciones de 2011, infra.[4] Popular Auto, Inc. alegó ser el dueño del vehículo confiscado, el cual le había arrendado al señor Lugo Morales. Por su parte, MAPFRE adujo que era la aseguradora de ese vehículo. Sostuvieron que la confiscación se realizó ilegalmente, pues el vehículo no se utilizó en conexión con actividad criminal alguna.

En su contestación, el Estado negó las alegaciones de los peticionarios y señaló que la confiscación se realizó conforme a derecho, puesto que se cumplió con los requisitos de la Ley Uniforme de Confiscaciones y, de esa forma, se garantizó el debido proceso de ley.[5] Incluyó como defensas afirmativas los argumentos de que actuó dentro del marco y la autoridad que le provee el precitado estatuto, y que al acto de confiscación le acompaña una presunción de legalidad y corrección que les corresponde a los peticionarios derrotar.

---

[3] Íd.
[4] *Demanda*, Apéndice, págs. 1-3.
[5] *Contestación a la demanda*, Apéndice, págs. 9-11.

Tras varios trámites procesales, los peticionarios presentaron una moción de sentencia sumaria.[6] Arguyeron, en síntesis, que la controversia del caso era estrictamente de derecho. En particular, adujeron que restaba determinar la legalidad de la confiscación y si el archivo de los cargos en el procedimiento criminal —antes descrito— constituía cosa juzgada —en su modalidad de impedimento colateral por sentencia— en el procedimiento civil de confiscación. En apoyo de ese criterio, razonaron que, habida cuenta de que el procedimiento criminal que se instó por los mismos hechos que sirvieron de base a la confiscación culminó sin una condena, procedía aplicar la doctrina de impedimento colateral por sentencia y declarar la ilegalidad de la confiscación.[7]

Por su parte, el Estado se opuso a que se dispusiera sumariamente del pleito.[8] Adujo que la conclusión de la causa criminal es irrelevante en cuanto a la procedencia de la confiscación; que la confiscación se efectuó debido a que el vehículo se utilizó en violación de la Ley de Sustancias Controladas; y que, por disposición de ley, esta se presume legal y correcta. Así, argumentó que les correspondía a los peticionarios derrotar esa presunción. Lo que implica que tenían el peso de demostrar, por preponderancia de la prueba, la ilegalidad de la confiscación.[9]

---

[6] *Solicitud de sentencia sumaria*, Apéndice, págs. 21-57.
[7] Íd., págs. 35-37.
[8] *Moción en oposición a solicitud de sentencia sumaria*, Apéndice, págs. 60-76.
[9] Íd., págs. 66-67.

Luego de examinar los escritos de las partes, el Tribunal de Primera Instancia dictó *Sentencia Sumaria* mediante la cual declaró con lugar la demanda de los peticionarios y ordenó al Estado a entregar el vehículo confiscado.[10] El foro primario puntualizó que no se puede desprender la relación que existe entre el proceso criminal y el civil relacionado con la confiscación. Determinó que, en vista del resultado que tuvo el proceso penal, correspondía aplicar la doctrina de impedimento colateral por sentencia.[11]

Inconforme, el Estado presentó una *Moción en solicitud de reconsideración*.[12] Repitió, en esencia, los argumentos que esbozaron en su oposición a la moción de sentencia sumaria.

Ante tal petitorio, el foro primario dejó sin efecto la sentencia emitida y, en consecuencia, emitió una *Orden* en la que declaró con lugar, sin más, la *Moción en solicitud de reconsideración* del Estado.[13]

Insatisfechos, los peticionarios recurrieron al Tribunal de Apelaciones mediante un recurso de *certiorari*.[14] El Estado, a su vez, presentó un alegato en oposición.[15] Tras evaluar los argumentos de las partes, el foro intermedio emitió una *Sentencia* en virtud de la cual confirmó el dictamen en reconsideración del foro primario.[16] Resolvió que el resultado de la acción criminal resulta irrelevante en cuanto a la

---

[10] *Sentencia Sumaria*, Apéndice, págs. 79-90
[11] Íd., pág. 89.
[12] *Sentencia Sumaria*, Apéndice, págs. 93-100.
[13] *Orden*, Apéndice, pág. 103.
[14] *Petición de certiorari*, Apéndice, págs. 105-127.
[15] *Alegato del Gobierno de Puerto Rico*, Apéndice, págs. 131-146.
[16] *Sentencia*, Apéndice, págs. 148-157.

procedencia o no de la acción de impugnación del vehículo. Al amparo de ese razonamiento, concluyó que les correspondía a los peticionarios aportar prueba que derrotara la presunción de corrección de la confiscación, independientemente del desenlace de la causa criminal. Ello, pues ambos procesos son separados y distintos, y el resultado del proceso criminal no derrota la presunción que le asiste al Estado en su proceder.[17]

No contestes, los peticionarios presentaron ante el foro intermedio una *Solicitud de reconsideración*,[18] la cual fue denegada.[19]

Inconformes aún, los peticionarios presentaron ante este Tribunal un recurso de *certiorari* mediante el cual solicitaron que revocáramos la Sentencia que emitió el Tribunal de Apelaciones. Adujeron el señalamiento de error siguiente:

> Erró el Tribunal de Apelaciones al no aplicar la doctrina de impedimento colateral por sentencia a los hechos de este caso porque se configura aquí una de las excepciones a la independencia del carácter *in rem* de las confiscaciones basado en la extinción de la acción penal contra los imputados del alegato delito que originó la confiscación.

Expedimos el recurso y, posteriormente, las partes presentaron sus alegatos. En sus respectivas comparecencias

---

[17] Para llegar a esta conclusión, el foro apelativo intermedio se amparó, únicamente, en la Exposición de Motivos y en el Artículo 8 de la Ley Uniforme de Confiscaciones de 2011. Según este, de ahí se puede colegir la intención legislativa de establecer que el proceso de confiscación es *in rem*, incoado contra el bien incautado, y no contra la persona a quien se le imputaron los delitos que motivaron la confiscación. Así, un procedimiento civil de confiscación no es dispositivo del criminal.
[18] *Solicitud de reconsideración*, Apéndice, págs. 160-170.
[19] *Resolución*, Apéndice, pág. 171.

las partes reiteran los argumentos vertidos tanto en el foro primario como en el foro intermedio.

Como se puede apreciar, de este recuento fáctico dimana palmariamente los vicios en el análisis del foro intermedio. Era imperioso, pues, dejar sin efecto ese dictamen tomando como base los argumentos que se exponen a continuación.

**II**

**A. La sentencia sumaria**

La Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, gobierna lo concerniente a la sentencia sumaria. El propósito de este mecanismo es disponer, expeditamente, de aquellos casos en los que no estén presentes hechos materiales en controversia que requieran de la celebración de un juicio en su fondo. Rosado Reyes v. Global Healthcare Group, LLC., 205 DPR 796, 809 (2020); Rodríguez García v. UCA, 200 DPR 929, 940 (2018).

La solicitud de sentencia sumaria debe estar acompañada por prueba tendente a demostrar, de manera preponderante, que no existe controversia sobre hechos medulares del caso. Zambrana García v. ELA et al., 204 DPR 328, 341-342 (2020); Jusino et als. v. Walgreens, 155 DPR 560, 577 (2001). De modo que, cualquier duda no es suficiente para derrotar una solicitud de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams

Rivera v. ELA, 178 DPR 914, 932 (2010); Nieves Díaz v. González Massas, 178 DPR 820, 848 (2010).

En repetidas ocasiones, "hemos definido que un hecho material es aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso". Zambrana García v. ELA et al., supra, pág. 341. De ahí que, ausente una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho. Rodríguez García v. UCA, supra, pág. 941.

## B. La confiscación

Nos hemos expresado en múltiples ocasiones a los efectos de definir la *confiscación*. Sobre ello, hemos dicho que consiste en "el acto de ocupación que lleva a cabo el Estado de todo derecho de propiedad sobre cualesquiera bienes que hayan sido utilizados en relación con la comisión de determinados delitos". Reliable Financial v. ELA, 197 DPR 289, 296 (2017); Reliable v. Depto. Justicia y ELA, 195 DPR 917, 924 (2016); Doble Seis Sport v. Depto. Hacienda, 190 DPR 763 (2014); Coop. Seg. Múlt. V. ELA, 180 DPR 655, 662 (2011). Asimismo, hemos manifestado que el procedimiento confiscatorio promovido por el Estado, efectuado conforme a derecho, constituye una excepción a la protección constitucional que impide tomar propiedad privada para fines públicos sin una justa compensación. Art. II, Sec. 9, Const. ELA, LPRA, Tomo 1. Véase, además, Coop. Seg. Múlt. v. ELA, supra, págs. 662-663.

El proceso de confiscación tiene dos modalidades. Coop. Seg. Múlt. V. ELA, supra, pág. 664. Por un lado, tiene una penal, que es parte del proceso criminal dirigido contra el alegado autor del delito base que autoriza la confiscación. Íd. En dicho proceso, "si se encuentra culpable a la persona imputada, la sentencia impondrá como sanción la confiscación del bien incautado". Íd. A esta modalidad se le conoce como *in personam*. Íd. La otra modalidad confiscatoria es aquella llevada a cabo mediante un proceso civil. Este es dirigido contra la cosa a ser confiscada, separándolo procesalmente de la causa criminal contra el presunto autor del delito. Íd. Esta modalidad se conoce como *in rem* y es la que se encuentra recogida en la Ley Uniforme de Confiscaciones de 2011, infra.

**C. El estatuto habilitador de las confiscaciones civiles**

La Asamblea Legislativa promulgó la Ley Núm. 119 de 12 de Julio de 2011 (Ley Núm. 119), conocida como la Ley Uniforme de Confiscaciones de 2011, 34 LPRA sec. 1724 *et seq.*, para viabilizar los procesos confiscatorios civiles en Puerto Rico. Mediante esta se autorizó al Estado a realizar confiscaciones de bienes, bajo determinadas circunstancias, por medio de un trámite expedito y uniforme. Flores Pérez v. ELA, 195 DPR 137, 147 (2016).

Cónsono con lo anterior, el Art. 9 de la Ley Núm. 119 prescribe los bienes que estarán sujetos a confiscación, a saber:

> [T]oda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se

autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación. Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico. 34 LPRA sec. 1724f.

Por su parte, el Art. 15 de la Ley Núm. 119 pormenoriza el procedimiento de impugnación que deberán observar las personas a quienes se les ha notificado de una confiscación. Así pues, preceptúa que se podrá impugnar la confiscación dentro de los 30 días siguientes a la fecha cuando se reciba la notificación, mediante la presentación de una demanda contra el Estado Libre Asociado de Puerto Rico y el funcionario que autorizó la ocupación. 34 LPRA sec. 1724l. Cabe señalar que esa disposición, además, le reconoce a la confiscación efectuada una presunción de legalidad y corrección. A esos efectos, el demandante tiene el peso de la prueba para derrotar la legalidad de la confiscación. Íd.

Por otro lado, los elementos necesarios que deben concurrir para la procedencia de una confiscación son: (1) la existencia de prueba **suficiente** y **preponderante** de que se ha cometido un delito, y (2) un nexo entre la comisión del delito y la propiedad confiscada. Rodríguez Ramos v. ELA, 174 DPR 194, 203 (2008); Del Toro Lugo v. ELA, 136 DPR 973, 983 (1994). Conviene enfatizar que le corresponde al Estado

demostrar que la propiedad confiscada se utilizó en una actividad delictiva. Rodríguez Ramos v. ELA, supra, pág. 203.

**D. La doctrina de impedimento colateral por sentencia y su aplicabilidad a los procesos confiscatorios civiles**

La doctrina de *impedimento colateral por sentencia* es una modalidad de la figura jurídica de *cosa juzgada.* La primera "opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final, y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén involucradas causas de acción distintas". Coop. Seg. Múlt. v. ELA, supra, pág. 673. Véase también: Suárez Morales v. ELA, 162 DPR 43, 59 (2004); A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 763 (1981). Esta doctrina "se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda". Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 221 (1992). Además, conviene destacar que esta tiene como fin promover la economía procesal y judicial al proteger a los litigantes contra lo que representa defenderse o probar sus reclamaciones en repetidas ocasiones cuando se trata de la misma controversia. Presidential v. Transcaribe, 186 DPR 263, 276 (2012); Beníquez et al. v. Vargas et al., 184 DPR 210, 225 (2012). Asimismo, evita litigios innecesarios y sentencias incongruentes. Íd.

En lo pertinente, este Tribunal ha tenido ante sí, desde hace décadas, la disputa recurrente sobre la aplicabilidad de

la doctrina de impedimento colateral en los procesos civiles de confiscación. En específico, hemos tenido que atender si el proceso criminal llevado contra una persona por los mismos hechos que sirvieron de base a la confiscación de un bien y que culmina de forma adversa al Estado, incide en el resultado del procedimiento civil de impugnación para la confiscación de este. Coop. Seg. Múlt. v. ELA, supra; Ford Motor v. ELA, 174 DPR 735 (2008); Suárez Morales v. ELA, supra; Del Toro Lugo v. ELA, supra; Carlo v. Srio. de Justicia, 107 DPR 356 (1978). A tales efectos, hemos tenido que resolver si, al amparo de la referida doctrina, el resultado favorable en el procedimiento criminal incoado por los mismos sucesos que justificaron una confiscación dispone inexorablemente del procedimiento civil de impugnación, de modo que se declara ilegal la confiscación y se ordena a devolver el bien. Ello, bajo el razonamiento de que, en vista de que no se pudo establecer la comisión de la conducta delictiva que motivó la confiscación, no existe justificación para que el Estado retenga el bien confiscado.

Al enfrentarnos a esa cuestión, hemos manifestado, sin ambages, que existe un "**decidido desarrollo de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal contra el alegado autor del delito que fundamenta dicha confiscación**". Coop. Seg. Múlt. v. ELA, supra, pág. 676 (Énfasis suplido).

En tal sentido, valiéndonos de la doctrina de impedimento colateral por sentencia, en Carlo v. Srio. de

Justicia, supra, pág. 363., en el contexto de una absolución en el proceso penal por los mismos hechos que motivaron una confiscación, enunciamos que:

> La absolución en los méritos adjudica con finalidad irrevisable el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para transportar mercancía ilícita. Daría lugar a una anomalía resolver bajo estas circunstancias que no habiéndose probado en el primer caso que el acusado utilizara el vehículo para transportar material relacionado con el juego, hubiese de enfrentarse todavía a la misma cuestión en la demanda de impugnación. **La doctrina de impedimento colateral por sentencia exige la desestimación del segundo proceso, aun cuando tenga por objeto un delito distinto, si al resolverse el caso anterior se adjudicaron y determinaron hechos necesariamente decisivos para el segundo.** (Cita depurada y énfasis suplido).

Posteriormente, en Del Toro Lugo v. ELA, supra, nos correspondía resolver si se sostenía la confiscación de un vehículo de motor de un tercero cuando por el delito que da base a la confiscación se desestiman los cargos al determinarse que no existe causa probable para acusar al imputado. Sentenciamos que no. Razonamos que, al tomar en cuenta la naturaleza de la vista preliminar, debíamos "concluir que cuando **no exista ni una *scintilla* de evidencia** para la determinación de causa probable en la vista preliminar —en aquellas situaciones en que esa determinación judicial advenga final y firme— tampoco podría sostenerse la confiscación de un vehículo relacionada con el delito imputado". Del Toro Lugo v. ELA, supra, págs. 992-993. (Énfasis suplido). Lo anterior, amparándonos, de igual forma, en la doctrina de impedimento colateral por sentencia.

Más adelante, en Suárez Morales v. ELA, supra, resolvimos que la desestimación de los cargos criminales por incumplimiento con los términos de juicio rápido constituía impedimento colateral por sentencia en la acción civil de confiscación.

En un pronunciamiento más reciente, en Coop. Seg. Múlt. v. ELA, supra, consideramos si la extinción del procedimiento criminal a consecuencia del fallecimiento de la persona imputada tiene como resultado la extinción del proceso de confiscación de la propiedad ocupada y su consiguiente devolución. **Respondimos en la afirmativa.** Incluso, en las circunstancias allí examinadas expresamos que el fundamento de tal razonamiento no era meramente la aplicabilidad de la antedicha doctrina, sino **"excepciones a la independencia del proceso *in rem* fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito"**. Íd. (Énfasis suplido).

En síntesis, **la trayectoria de nuestros precedentes en esta materia se ha abocado ineludiblemente en atar el desenlace del proceso confiscatorio civil al del proceso criminal incoado por la misma situación fáctica.** Los casos precitados contemplan que la absolución en los méritos durante el juicio en su fondo, la exoneración del imputado al advenir final y firme la determinación de no causa probable para acusar, la desestimación de los cargos criminales por incumplimiento con los términos de juicio rápido y la extinción del procedimiento criminal a consecuencia del

fallecimiento de la persona imputada, **"son fundamentos suficientes para aplicar la doctrina de impedimento colateral por sentencia en el correspondiente proceso civil de confiscación y de esa manera evitar incongruencias injustificadas entre el ordenamiento criminal y el civil"**. Suárez Morales v. ELA, supra, págs. 56-57. (Énfasis suplido).

Ahora bien, conviene hacer una serie de aclaraciones. En primer lugar, nuestros pronunciamientos previos estuvieron enmarcados en legislaciones sobre confiscación que actualmente están derogadas. Sin embargo, ello no significa que lo pautado haya perdido vigencia. Al contrario, **estos análisis mantienen su fuerza y vigor.**

En contra de atar el resultado del proceso de confiscación al de la causa criminal se esgrime el fundamento central de la naturaleza *in rem* e independiente de la confiscación. Sobre ese particular, en nuestros pronunciamientos previos, si bien se ha reconocido y validado el carácter *in rem* e independiente del proceso confiscatorio civil, se ha planteado que ello no es óbice para aplicar la doctrina de impedimento colateral, de modo que el desenlace de la causa criminal afecta el resultado del proceso civil de impugnación de la confiscación. Esto, pues la causa criminal y el proceso civil de confiscación **están inherentemente relacionados**, debido a la naturaleza criminal y propósito punitivo del último. Coop. Seg. Mult. V. ELA, supra, pág. 664; Centeno Rodríguez v. ELA, 170 DPR 907, 913 (2007); Del Toro Lugo v. ELA, 136 DPR 973, 986-987 (1994); Carlo v. Srio.

de Justicia, supra, pág. 362; Ochoteco v. Tribunal Superior,

88 DPR 517, 528 (1963).[20]

    Ante ello, y habida cuenta de que **"los estatutos**

**relacionados con confiscaciones de propiedad privada se**

**interpretarán de manera restrictiva y de forma compatible con**

**la justicia y los dictados de la razón natural"**, Coop. Seg.

Múlt. V. ELA, supra, pág. 668 (énfasis suplido), **no sería**

**justo ni razonable permitir que el proceso confiscatorio**

**civil continúe cuando la causa criminal culminó sin éxito**

**para el Estado**. Ya que, daría paso a propiciar indirectamente

---

[20] De la Ley Núm. 119 surge claramente la intención de la Asamblea Legislativa de disponer que el proceso de confiscación civil es *in rem* e independiente de la causa criminal que se incoe por los mismos hechos. Véase: 34 LPRA sec. 1724. Empero, ello no disipa la interpretación realizada por este Tribunal a los efectos de vincular ambos procesos, en consideración de la naturaleza punitiva y criminal de la confiscación. Esa interpretación trasciende lo que en teoría la Asamblea Legislativa ha prescrito, pues, en la práctica, el estatuto se aplica de manera que el procedimiento *in rem* mantiene su condición esencialmente punitiva y de infligir castigo. Indudablemente, la naturaleza *in rem* de la acción no la desviste de esa condición. Carlo v. Srio. de Justicia, 107 DPR 356, 362 (1978); Ochoteco v. Tribunal Superior, 88 DPR 517, 528 (1963). Ello, pues, es evidente que su objetivo es castigar por la comisión de una ofensa contra la ley.

    Esto es cónsono con pronunciamientos emitidos por el Tribunal Supremo federal, de los cuales se infiere que, si bien la confiscación se denomina civil y se considera independiente de la causa penal, **no deja de ser un proceso esencialmente punitivo que busca penalizar por la conducta delictiva.** Véanse: Austin v. U.S., 509 U.S. 602 (1993); One 1958 Plymouth Sedan v. Com. of Pa., 380 US 693, 697 (1965). Particularmente, en One 1958 Plymouth Sedan v. Com. of Pa., supra, pág. 697, el Tribunal Supremo federal estableció que:

> "[P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, **are in their nature criminal** [and] though technically a civil proceeding, [it] is in substance and effect a criminal one [...] [S]uits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi criminal nature [...]". (Énfasis suplido). Íd.

    Por otro lado, mediante la Ley Núm. 287-2018, se enmendó la Ley Núm. 119 para establecer en qué instancias no sería de aplicación la doctrina de impedimento colateral por sentencia. Dicha enmienda fue posterior a los hechos de este caso, por lo que no controla su disposición.

un castigo contra la persona con interés sobre la propiedad, cuando esta ya no se encuentra sujeta a ser sancionada criminalmente por los hechos que dieron base a la confiscación.

En segundo lugar, se ha argüido que es improcedente relacionar el proceso civil de confiscación con la causa criminal, debido a que tienen estándares probatorios distintos.[21] Mientras el proceso civil de confiscación requiere evidencia **preponderante** del vínculo del objeto incautado con alguna actividad delictiva, el procedimiento criminal exige evidencia **más allá de duda razonable** para sostener una convicción. La premisa inarticulada es que, de no prosperar la convicción en la esfera criminal, todavía en el proceso confiscatorio civil se puede establecer la conexión del objeto incautado con alguna actividad ilícita, puesto que en la causa civil el estándar es menor. Relacionado con lo anterior, conviene discutir el estándar de prueba requerido para sostener una determinación de causa probable para arresto.

La Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, establece el procedimiento para la determinación de causa probable para arresto de una persona. La intención en esta etapa no es adjudicar en los méritos la culpabilidad o inocencia del imputado. Pueblo v. Félix Avilés, 128 DPR 468 (1991). Por ello, basta con que el dictamen del magistrado se

---

[21] Véase *Alegato del Gobierno de Puerto Rico*, pág. 10.

base en una *scintilla* de prueba que demuestre que existe *prima facie* causa probable, esto es, la mera probabilidad de que se cometió el delito imputado y que el imputado probablemente lo cometió. Pueblo v. Rivera Lugo, 121 DPR 454, 475 (1988); Vázquez Rosado v. Tribunal, 100 DPR 592, 594 (1972). El profesor Chiesa Aponte comenta que, en esta etapa del proceso criminal, al aludirse a la *scintilla*, lo que se requiere es más que una mera sospecha, pero menos que preponderancia de la evidencia. E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución*: Etapa Investigativa, San Juan, 2017, pág. 343. **Es decir, el estándar probatorio en la vista de causa probable para arresto es menor que el requerido en un procedimiento civil ordinario.**

## III

Los peticionarios recurren, en esencia, de la denegatoria del foro primario de su moción de sentencia sumaria. En su único señalamiento de error sostienen que el foro intermedio erró al confirmar tal proceder de la sala de instancia. Razonan que se debió disponer del pleito sumariamente, ya que no existía controversia de hechos y únicamente restaba aplicar el derecho. En específico, postulan que, habida cuenta de que se extinguió la acción penal —relacionada con los mismos hechos de la confiscación— al Estado no recurrir en alzada de la determinación de no causa para arresto, dicho resultado adjudicó indefectiblemente el proceso confiscatorio. La base de este análisis se cimenta en la doctrina de impedimento colateral

por sentencia, por virtud de la cual, dado que no se pudo probar en la causa criminal el vínculo de los imputados —poseedores de la propiedad confiscada— con alguna actividad delictiva, mucho menos eso se podrá hacer con la propiedad incautada.

Por su parte, el Estado contiende que no aplica la doctrina de impedimento colateral por sentencia. Esto se debe a que, según los términos de la propia Ley Núm. 119, el proceso de confiscación es *in rem*, civil e independiente de cualquier proceso penal que se pueda llevar por los mismos hechos. Argumenta, adicionalmente, que los peticionarios no rebatieron la presunción de corrección de la confiscación. El Estado puntualiza que el hecho de que el poseedor del bien no resulte implicado en los cargos imputados, no es suficiente para declarar inválida la confiscación.[22] Por tanto, es su parecer que el foro intermedio actuó correctamente. No me persuaden sus planteamientos. Soy del criterio que el error señalado por los peticionarios se cometió.

Según expuse, la causa criminal y el proceso de confiscación llevado por los mismos hechos, están estrechamente relacionados. Es por ello que, al amparo de la doctrina de impedimento colateral por sentencia, el resultado favorable en el proceso criminal para la persona que fue poseedora de la propiedad confiscada necesariamente conlleva

---

[22] *Alegato del Gobierno de Puerto Rico*, pág. 8.

la conclusión del proceso de confiscación con la determinación de invalidez de esa actuación del Estado.

En este caso, al haber culminado el pleito criminal con la determinación final y firme de no causa para arresto, y al acreditarse tal hecho material en el proceso civil de confiscación, al foro primario solo le restaba aplicar el derecho. **Así, las normas jurídicas atinentes a la controversia lo hubiesen llevado, indubitadamente, a determinar la improcedencia de esa incautación.** Estimo que, el resultado favorable que obtuvieron los imputados en el proceso criminal en la etapa de vista de causa probable para arresto es prueba suficiente para derrotar la presunción de legalidad y corrección de la confiscación efectuada. Ello, evidentemente, es la conclusión forzosa, en vista de que la situación fáctica en la que se basó tanto el proceso criminal como el de la confiscación es la misma.

Del mismo modo, lo resuelto en <u>Del Toro Lugo v. ELA</u>, supra, sirve de base para este razonamiento. Allí se consideró un cuadro fáctico muy similar al de la controversia ante nos. En la etapa de vista de causa probable para acusar, como parte del proceso criminal instado —relacionado con la confiscación—, hubo una determinación de no causa probable que advino final y firme. Dicho resultado, según sentenció este Tribunal, era fundamento suficiente para declarar insostenible la confiscación realizada.

Si bien en el caso de autos se trató de una vista de causa probable para arresto, esta guarda cierta similitud con

la vista de causa probable para acusar, puesto que en ambas se requiere una determinación de causa o no causa probable y el estándar probatorio es de *scintilla*.[23]

Por otra parte, en el procedimiento civil de confiscación se exige que el Estado, mediante el estándar probatorio de preponderancia, demuestre que la propiedad confiscada se utilizó en una actividad delictiva. En contraste, en la vista de causa probable para arresto se requiere que este establezca a través de una *scintilla* de prueba la probabilidad de que se cometió el delito imputado y que el imputado probablemente lo cometió. Según esbocé, el estándar probatorio de este último proceso **es menor** al del primero.

En el caso ante nos, debido a que el Estado no probó por *scintilla* en el ámbito criminal la probabilidad de que los imputados cometieron los delitos, difícilmente podría demostrar en el procedimiento civil de confiscación —fácticamente relacionado con la causa criminal—el vínculo de la propiedad confiscada con alguna actividad delictiva mediante preponderancia de la prueba. Resulta ilustrativo para este análisis lo resuelto en Román v. Fattah, 109 DPR 493 (1980). Allí se reconoció que, constituye una limitación

---

[23] En Santini v. ELA, 199 D.P.R. 389 (2017), esta Curia se enfrentó a otra controversia fácticamente similar a la atendida en del Del Toro Lugo v. ELA, 136 DPR 973 (1994), en cuanto a que la determinación de no causa probable para acusar, en la etapa de vista preliminar, advino final y firme. Allí, aunque mediante Sentencia, mantuvimos el razonamiento de que ese resultado de la causa criminal constituyó impedimento colateral por sentencia del procedimiento civil de confiscación incoado por hechos análogos.

a la aplicación de la doctrina de cosa juzgada entre dos procesos judiciales —uno criminal y otro civil— con una situación de hechos similar, la diferencia en estándares probatorios entre ambos.[24] No obstante, bajo ciertas circunstancias, la determinación en uno adjudica, necesariamente, un hecho determinante de otro.[25]

En vista de que el Estado no prosperó en probar —mediante *scintilla*— en el ámbito criminal la conexión de los imputados con alguna actividad delictiva, este no podía establecer en el procedimiento civil de confiscación, con un estándar probatorio mayor, el nexo entre el bien confiscado y la ocurrencia de conducta constitutiva de delito. Dicho de otro modo, como el Estado no pudo demostrar en la vista de causa probable para arresto la alegada conducta delictiva de los imputados, al amparo de la doctrina de impedimento colateral

---

[24] En el contexto de <u>Román v. Fattah</u>, 109 DPR 493 (1980), en cuanto al proceso criminal al que se hace alusión, se refiere a la etapa del juicio en su fondo, donde se exige prueba más allá de duda razonable para establecer la culpabilidad de la persona acusada. Ello, en contraste con las causas civiles, que, de ordinario, como hemos enfatizado, requieren preponderancia de la evidencia.

[25] <u>Román v. Fattah</u>, supra, trató sobre la interrelación de la acción criminal por abandono de menores y la acción civil filiatoria. Mientras en la acción criminal se debía probar la paternidad más allá de duda razonable, en la civil solo era necesario establecer el mismo hecho mediante preponderancia de la evidencia. Esta diferencia impedía que entre ambas acciones operara recíprocamente la figura jurídica de cosa juzgada. En los hechos en <u>Román v. Fattah</u>, supra, cuando la absolución en el proceso criminal obedeció a que no se determinó que el acusado era padre del menor supuestamente abandonado, esa absolución sólo indicaba que la prueba del Estado no era suficiente como para establecer el hecho de la paternidad más allá de duda razonable, pero bajo ningún concepto implicaba que esa prueba no era suficiente para establecer ese mismo hecho por preponderancia de la prueba, al ser un estándar menos riguroso. <u>Íd.</u>, pág. 495.
Por el contrario, si en el proceso criminal se demostraba la paternidad más allá de duda razonable, dicho hecho no podía ser controvertido posteriormente en un pleito donde solo se requiriese demostrar dicha paternidad por preponderancia de la prueba. <u>Íd.</u>, pág. 496. Del mismo modo, "un demandante cuya prueba no pudo preponderar sobre la contraria para establecer la paternidad difícilmente podría establecerla más allá de duda razonable". <u>Íd.</u>

por sentencia, y habida cuenta de la diferencia en los estándares probatorios, ello dispone del proceso civil confiscatorio pendiente por los mismos hechos. Por tanto, era imperativo resolver que el resultado que obtuvieron los imputados en la acción penal inextricablemente relacionada con este caso constituyó un impedimento colateral por sentencia que impide continuar con el pleito civil de confiscación.

Empero, ello no fue lo que se dictaminó. Se permitió, al contrario, que se le diera paso al contrasentido de imputarle conducta delictiva a una cosa, cuando, obviamente, solo las personas pueden delinquir. **Si no se pudo acreditar el vínculo del poseedor del bien con la comisión de delitos**, **menos se puede establecer para el bien. La cosa no delinque por sí sola**. A tal efecto, resulta neurálgico reproducir *in extenso* el pronunciamiento de este Tribunal en <u>Coop. Seg. Múlt. v. ELA</u>, supra, pág. 667:

> En cuanto a la relación entre la cosa y la conducta delictiva, fundamento que justifica la confiscación, hemos resuelto que[,] como toda ley civil relacionada indirectamente con la comisión de un delito, su ánimo correctivo parte del supuesto de una persona culpable de su infracción. Igualmente, hemos reconocido que su objetivo es castigar la ofensa cometida contra la ley. La conexión entre el proceso de confiscación *in rem*, por un lado, y la conducta criminal base y el autor de dicha conducta criminal, por el otro, es evidente: El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya dado a ésta. Es decir, no obstante la ficción jurídica que permite ir directamente contra la cosa como si ésta fuera responsable de la conducta criminal, hemos reconocido que, al fin y al cabo, **alguien** tiene que utilizar la cosa delictivamente. También hemos

reafirmado el vínculo necesario en todo caso de confiscación entre la propiedad confiscada y la comisión del delito. Como hemos visto, la doctrina que mediante la ficción jurídica responsabiliza directamente a la cosa tiene como objetivo derrotar la inocencia del dueño de la propiedad que será confiscada, no así la inocencia de la persona quien se alega cometió el delito. **La cosa no es coautora del crimen**. (Cita depurada y énfasis suplido).

En fin, en esta ocasión, era meritorio que estableciéramos que una determinación final y firme de no causa para arresto constituye un impedimento colateral por sentencia para la causa civil de impugnación de la confiscación celebrada por los mismos hechos. Asimismo, que al acreditársele al foro primario dicho resultado de la etapa aludida del proceso criminal, este vendría obligado a decretar la ilegalidad de la confiscación efectuada.

**IV**

Habida cuenta de que no se adoptó el análisis expuesto, disiento. Correspondía revocar el dictamen del Tribunal de Apelaciones.

Maite D. Oronoz Rodríguez
Jueza Presidenta
